UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.

No. 69 Civ. 200 (DNE).

United States District Court, S. D. New York.

May 19, 1982.

See also, D.C., 475 F.Supp. 1372, 2nd Cir., 618 F.2d 923.

---

U. S. Dept. of Justice, Antitrust Div., for U. S. A.

Cravath, Swaine & Moore, New York City, for IBM.

Rowley & Watts, Washington, D. C., for amicus curiae Philip M. Stern.

Public Citizen Litigation Group and Vladeck, Waldman, Elias & Engelhard, New York City, for amicus curiae Public Citizen.

## MEMORANDUM

EDELSTEIN, District Judge:

On May 17, 1982 International Business Machines Corporation ("IBM") delivered to the court an affidavit requesting this court to recuse itself pursuant to 28 U.S.C. §§ 144, 455, and the fifth amendment of the United States Constitution from further participation in this proceeding.[1] The affidavit, signed by Frank T. Carey, chairman of the board of directors of IBM, states:

> I believe that Judge David N. Edelstein, the judge who presided over the trial of *U. S. v. IBM* and who, since the dismissal of that case by stipulation of the parties on January 8, 1982, has nevertheless purported to enter "orders", to hold "hearings" and otherwise to conduct "proceedings" therein, has a personal bias and prejudice against IBM; that his impartiality to conduct any further proceedings whatever with respect to IBM or the subject matter of *U. S. v. IBM* may reasonably be questioned; that he has a bent of mind that will prevent impartiality of judgment; and that this bias and prejudice could not have come from any source other than an extrajudicial source.

The conclusion quoted above is based on the affidavit of Thomas D. Barr, dated May 17, 1982. The allegations in the Barr affidavit are generally that the court "has acted in excess of [its] ... lawful and constitutional powers", "has violated the Code of Judicial Conduct", "has engaged in a campaign to smear Mr. Baxter and to reverse the dismissal of *U. S. v. IBM*", and "has expressed publicly an opinion concerning the merits of dismissal ... and publicly accused Mr. Baxter of having a conflict of interest".

## BACKGROUND

On January 8, 1982 the Department of Justice and IBM filed a stipulation of dismissal in this case. On February 8, the court held a conference regarding the parties' request to vacate certain pre-trial or-

---

1. The papers submitted by IBM are uncaptioned. Rule 1 of the Court Notice of the Southern District of New York states that "All papers, motions, applications, and orders presented for consideration or filing must bear the docket number of the matter followed by the initials of the Judge assigned thereto." The papers are thus facially defective.

ders concerning the preservation of documents. On March 2, the court convened another conference to make certain correspondence between a Mr. Erickson of the Memorex Corporation and Assistant Attorney General William F. Baxter, and the court's concern over the correspondence, a matter of record. On March 19, the court issued an order granting Philip M. Stern, by his attorneys, leave to appear as *amicus curiae*. The court also entered an order at the request of *amicus curiae* Philip Stern setting a hearing for April 8 on the following issues:

(1) Whether the stipulation of dismissal filed on January 8, 1982 is ineffective and a nullity because of the failure to comply with the provisions of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b) *et seq.* ("Tunney Act"), and

(2) Whether the stipulation of dismissal is ineffective and a nullity because prior activities of Assistant Attorney General William F. Baxter disqualified him from participation in the review and dismissal of this case.

The hearing date was adjourned once at the request of Mr. Barr. The new date set by the court for the hearing was April 19. On April 5, the Department of Justice moved for an adjournment of the hearing date until May 19. On April 6, IBM submitted to the court a letter and enclosure entitled "Memorandum for Judge Edelstein" in response to plaintiff's motion, stating its position that the court lacked jurisdiction following the dismissal. Later on April 6, the court entered an order adjourning the hearing date until May 19. On May 7, plaintiff moved for another adjournment of the hearing date to June 21 on the grounds that the Office of Professional Responsibility of the United States Department of Justice and the Acting Attorney General had not completed the review of the contention of *amicus curiae* Philip Stern that Assistant Attorney General William F. Baxter should have disqualified himself from involvement in this action, and that the United States would not be able to respond fully to all the issues raised by the March 19 Order to Show Cause until said

review was completed. The court granted in part and denied in part plaintiff's motion. The hearing on the issue of the disqualification of Assistant Attorney General Baxter was adjourned to June 21. The May 19 hearing on the applicability of the Tunney Act, however, was not adjourned. The court also instructed that memoranda addressing the Tunney Act issue be filed before 5 P.M. on May 17. Shortly after 5 P.M. on May 17, IBM delivered to chambers its affidavit requesting recusal, its supporting affidavit, and a document entitled "Memorandum for Judge Edelstein Concerning the Antitrust Procedures and Penalties Act ("Tunney Act") and the Disqualification of Judge Edelstein."

## DISCUSSION

IBM, in its April 6 "memorandum", and in its papers submitted in support of the instant request for recusal, suggests that any actions by the court following the dismissal are "entirely without any jurisdiction". IBM at no point moved to vacate any of the orders of the court for lack of jurisdiction. Rather, IBM has taken it upon itself to determine the court's jurisdiction, and having concluded that no jurisdiction exists, has submitted uncaptioned papers for the court's edification. The court looks with disfavor upon IBM's naked attempt to deny jurisdiction and its omission of a case caption from its papers. Further, IBM, after insisting that the court lacks jurisdiction to conduct further proceedings in this case, has adopted a seemingly contradictory position by interposing its views on a substantive issue which in IBM's view the court is powerless to decide.

■ IBM's position is without support. It is hornbook law that the court has jurisdiction to determine its own jurisdiction. As stated by Professor Wright:

"Jurisdiction to determine jurisdiction" refers to the power of the court to determine whether it has jurisdiction over the parties to and the subject matter of the suit. If the jurisdiction of a federal court is questioned, the court has the power,

subject to review, to determine the jurisdictional issue.

C. Wright, *The Law of Federal Courts* 57–58 (3d ed. 1976). *See* 13 C. Wright & A. Miller, *Federal Practice and Procedure* § 3536 at 330–31 (1975). The leading case on this issue is *United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). In that case, the Supreme Court held that orders by the district court must be followed, even if it is ultimately determined that the court lacked jurisdiction. The district court has the power to determine if it has the capacity to hear and decide the merits of a case before it, and the court's orders preserving the status quo must be obeyed until the determination of jurisdiction. The Supreme Court, however, did state that "a different result would follow were the question of jurisdiction frivolous and not substantial . . ." *Id.* at 293, 67 S.Ct. at 695. Justice Frankfurter, in concurring, elaborated:

> Only when a court is so obviously traveling outside its orbit as to be merely usurping judicial forms and facilities, may an order issued by a court be disobeyed and treated as though it were a letter to a newspaper. Short of an indisputable want of authority on the part of a court, the very existence of a court presupposes its power to entertain a controversy, if only to decide, after deliberation, that it has no power over the particular controversy. Whether a defendant may be brought to the bar of justice is not for the defendant himself to decide . . . . When in a real controversy, such as is now here, an appeal is made to law, the issue must be left to the judgment of the courts and not the personal judgment of one of the parties. This principle is a postulate of our democracy.

*Id.* at 309–11, 67 S.Ct. at 703.

■ The legal issue to be heard at the May 19 hearing is the applicability of the Tunney Act to the dismissal of this case. If the Tunney Act applies, then the court retains jurisdiction and the parties must comply with the Act's procedural safeguards. If the Tunney Act does not apply, then the court lacks the jurisdiction to order the parties to comply with the Act's safeguards. Thus, the issue of the applicability of the Tunney Act is a jurisdictional question.

Although the court, at the January 8 conference and at subsequent conferences, has suggested that the Tunney Act does not apply to a voluntary dismissal, the question of the applicability of the Tunney Act to the termination of this proceeding is not "frivolous" or "insubstantial". Prior to the granting of leave to appear as *amici curiae* the Tunney Act issue was not briefed for the court. Further, absent the granting of leave to *amici curiae,* the court could not have been briefed on both sides of this issue.

The issue of the applicability of the Tunney Act raises a jurisdictional question which should be determined by the court and not by the personal judgment of an interested party. Nowhere in IBM's papers is there any discussion of the court's jurisdiction to determine jurisdiction. IBM, rather, has usurped the judicial function and has attempted to arrogate to itself whether it may be "brought to the bar of justice." *Id.* at 310, 67 S.Ct. at 704.

■ IBM's suggestion that the current proceeding is distinct from *U. S. v. IBM,* 69 Civ. 200 (DNE) is also incorrect. The Tunney Act generally provides procedures for terminating a case, not for initiating a case, and thus the issue of the applicability of the Tunney Act is an issue of continuing rather than *de novo* jurisdiction. If the Tunney Act applies, the filing of a stipulation of dismissal in this case is ineffective as a final disposition pending compliance with the Act's procedures.

*Disqualification*

Having found that the court has jurisdiction to determine the applicability of the Tunney Act, the court will treat IBM's affidavit as a request for the court's recusal from further proceedings in *U. S. v. IBM.* The request is utterly without merit and fails in all respects.

■ Title 28 U.S.C. § 144 provides, *inter alia*, that "A party may file only one such affidavit [alleging bias under § 144] in any case." IBM filed such an affidavit in this case on July 19, 1979. This court denied IBM's request for disqualification, 475 F.Supp. 1372 (S.D.N.Y.1979), and the Second Circuit affirmed the denial in *In re International Business Machines Corp.*, 618 F.2d 923 (2d Cir. 1980). For the reasons stated *supra*, the court rejects any contention that the current proceeding is distinct from *U. S. v. IBM*. IBM's affidavit is thus the second affidavit seeking recusal in this case [2] and is improper under § 144. *See United States v. Anderson*, 433 F.2d 856, 859 (8th Cir. 1970); *United States v. Hoffa*, 382 F.2d 856 (6th Cir. 1967), *cert. denied*, 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968).[3]

■ In addition, IBM's affidavit is untimely. Timeliness is a requisite under both § 144 and § 455, *In re International Business Machines Corp.*, *supra*, 618 F.2d at 933–34, and is to be strictly enforced as a safeguard against use of the procedure as a delaying tactic, *see Peckham v. Ronrico Corp.*, 288 F.2d 841 (1st Cir. 1961). IBM's complaints center on alleged activity of the court occurring after the dismissal and on

or before the March 19 Order to Show Cause.[4] IBM, however, waited until late on May 17 to submit its affidavit. It is well settled that "one must raise the issue of the disqualification of the judge at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977). This IBM did not do. Further, IBM has not demonstrated any good cause for delay.[5] *See United States v. International Business Machines Corp.*, *supra*, 475 F.Supp. at 1378–1379.

■ Finally, IBM's affidavit does not show that the court has a personal, extrajudicial bias or prejudice against IBM under § 144 and § 455. In fact, the Barr affidavit is a retread of many of the allegations contained in IBM's first request for disqualification. This court previously held that these allegations were an insufficient basis for recusal, and the Second Circuit agreed. As with the previous affidavit of recusal filed in this case, the matters now alleged, accepted as true for the limited purpose of consideration of this request, do not indicate any bias against IBM. The court's

2. The court filed IBM's uncaptioned papers with the clerk of the court in *U. S. v. IBM*, 69 Civ. 200 (DNE). Under § 144 it would be improper to consider recusal without the filing of the affidavit.

3. The request for recusal is being brought under § 455 in addition to § 144. As stated by the Second Circuit with respect to the previous request for recusal in this case:

Amended § 455 provides that it "shall not apply to the trial of any proceeding commenced prior to the date of this Act [Dec. 5, 1974]...." The complaint here was filed in 1969 but trial did not commence until 1975. It therefore may well be that § 455 is not applicable here. We have previously indicated that the time of filing the complaint is crucial ....

*In re International Business Machines Corp.*, *supra*, 618 F.2d at 927 n.4 (citations omitted).

Although § 455 does not explicitly limit a party to one affidavit of recusal, the case law governing § 144 generally applies in consideration of motions under § 455. *See United States v. Hall*, 424 F.Supp. 508 (D.C.Okl.), *aff'd*, 536 F.2d 313 (10th Cir. 1975), *cert. denied*, 429

U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976). Further, the language of subdivision of § 455 relied upon by IBM, § 455(b)(1), is identical to the language of § 144. *See In re International Business Machines Corp.*, *supra*, 618 F.2d at 928. IBM has suggested no reason why it should be able to submit two affidavits under § 455. Under these circumstances, the court finds the second filing of an affidavit under § 455 to be improper.

4. The only actions of the court subsequent to March 19 noted in the affidavit of Mr. Barr were the granting of adjournments at the request of plaintiff, and the granting on April 19 of an application for appointment of a second *amicus curiae* to brief an issue raised in the March 19 Order to Show Cause.

5. Even assuming that IBM is correct in its contention that the present proceedings are distinct from *U. S. v. IBM*, IBM has not met the timeliness requirements of the recusal statutes. It has not complied with the 10 day requirement of § 144, nor has it shown good cause for delay.

remarks and acts in this case following the dismissal were a response to that dismissal and the actions of the parties. Observations and comments by the court were based upon the court's judicial observations during this case. Any *ex parte* communications received by the court were placed on the record at the earliest possible time in order that all parties would be made aware of their contents. IBM has provided no support for its conclusory assertion of a violation of the Code of Judicial Conduct nor that a violation of the Code would constitute a basis for recusal. Further, adverse rulings or mere error by the district court is an insufficient basis for recusal.[6]

For the foregoing reasons, IBM's request for recusal is without merit and is denied.

---

6. The failure of the affidavit to state a basis for disqualification under the recusal statutes is fatal to IBM's due process claim as well. *In re*

*International Business Machines Corp., supra,* 618 F.2d at 932.