**ALLEN–MYLAND, INC., Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

**No. 88 Civ. 7553 (DNE).**

United States District Court, S.D. New York.

April 6, 1989.

**492**

Schnader, Harrison, Segal & Lewis, New York City (Thomas Greene, M. Christine Carty, Robert G. Levy and Berryl A. Speert, of counsel), for plaintiff.

Cravath, Swaine & Moore, New York City (Thomas D. Barr, Robert F. Mullen and Evan R. Chesler, of counsel), for defendant.

## OPINION AND ORDER

EDELSTEIN, District Judge:

### BACKGROUND

In October, 1985 plaintiff Allen–Myland, Inc. ("AMI") instituted an action against IBM in the United States District Court for the Eastern District of Pennsylvania alleging violations of § 1 and § 2 of the Sherman Act and state law claims. *Allen–Myland, Inc. v. International Business Machines Corp.*, 693 F.Supp. 262 (E.D.Pa. 1988) (hereafter *"AMI v. IBM"*). In No-

vember, 1986 IBM asserted five counterclaims against AMI; IBM claimed that AMI's copying of 3090 microcode and of IBM's technical publications violated IBM's copyrights and that AMI's use of parts for IBM large scale mainframe computers violated IBM's contractual rights.

In response to these counterclaims, AMI asserted that its conduct was authorized by the final judgment in *United States of America v. International Business Machines Corp.*, Civil Action No. 72–344 (S.D.N.Y. January 25, 1956) (hereafter "Consent Decree") and that the Consent Decree provided a defense to IBM's counterclaims. After a trial was held in February, 1987, before the Honorable Thomas N. O'Neil, Jr. on the liability issue, the Court entered an Order in favor of IBM. Other claims, including IBM's counterclaims, were not tried.

On August 10, 1987, AMI filed a motion requesting leave to supplement its Complaint to add a claim for declaratory relief. At a September conference before Judge O'Neil in September, 1987 AMI suggested that in the interest of uniformity of interpretation, the Southern District of New York would be the proper forum for deciding issues relating to the Consent Decree. Judge O'Neil stayed all proceedings in *AMI v. IBM* in the Eastern District of Pennsylvania. Thereafter, AMI filed the instant action seeking a declaratory judgment that AMI's copying of microcode and publications is permitted by the Consent Decree.

### MOTION FOR RECUSAL

On December 19, 1988, International Business Machines Corporation ("IBM"), defendant in this action, filed a motion to dismiss AMI's complaint. Simultaneously, IBM filed an affidavit that asked this Court to disqualify itself from further participation in the proceedings, pursuant to 28 U.S.C. sections 144, 455 and the fifth amendment of the United States Constitution. It is paradoxical that IBM would bring before this Court a motion for recusal coupled with a motion to dismiss. The affidavit accompanying the motion for recusal, signed by Donato A. Evangelista,

Vice President and General Counsel of IBM, states:

I believe that Judge David N. Edelstein has a personal bias and prejudice against IBM; that his impartiality to conduct further any proceedings with respect to IBM may reasonably be questioned; and that he has a bent of mind that will prevent impartiality of judgment; and that his bias and prejudice could not have come from any source other than an extrajudicial source.

## I. Section 455(a)

█ Initially, IBM contends that this Court should be disqualified pursuant to 28 U.S.C. § 455(a).[1] The Second Circuit standard for recusal under § 455(a) is "whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." *SEC v. Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313. As the *Drexel* Court stated in its discussion of § 455(a), "the test to be applied is an objective one which assumes that a reasonable person *knows and understands all the relevant facts.*" *Id.* (emphasis in original) (citing *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985)); *United States v. Ferguson*, 550 F.Supp. 1256, 1260 (S.D.N.Y.1982). This Court should determine the appearance of impropriety "not by considering what a straw poll of the only partly informed man-in-the-street would show— but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." *Drexel*, 861 F.2d at 1313.

*Drexel* involved allegations of bias arising from a financial relationship between the judge and one of the parties from which an inference of impartiality might be drawn. The Court of Appeals concluded recusal was unwarranted. In contrast, this recusal motion involves no financial or other relationship, but rather a continued manifestation of defendant's concern regarding this Court's impartiality regarding IBM.

The civil antitrust action brought by the United States against IBM was commenced January 17, 1969 and terminated by stipulation on January 8, 1982. A trial in excess of 700 days covering more than 114,000 pages of transcripts was conducted before this Court. This Court has already entertained two IBM motions seeking the recusal which were heard by the Second Circuit as well.[2] On each occasion neither this Court nor the Second Circuit found that this Court should recuse itself. Thus, much of the conduct complained of in IBM's third recusal motion before this Court has previously been found insufficient to require recusal.

█ At issue here is whether the evidence of the previous conduct of this Court manifests a bent of mind to warrant recusal in this later case. IBM alleges that the prior acts and statements of this Court are compelling evidence of bias and antipathy toward IBM. A recent Supreme Court decision suggests that it is important to identify the facts which might reasonably cause an objective observer to question the judges's impartiality. *Liljeberg v. Health Services Acquisition Corp.*, — U.S. —, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988). Therefore, we turn to the facts cited by IBM in the instant motion.

In support of a finding of bias, defendant submits the following actions and statements of the Court after *United States v. IBM* was dismissed including:

1) attempting to "upset the dismissal",

2) orders requiring preservation of documents,

3) "vituperative personal attacks" on Assistant Attorney General Baxter because of his decision to dismiss the case,

4) conducting court conferences for "the convenience of the press", and

---

1. The full text of section 455(a) reads as follows: Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

2. While the Court of Appeals affirmed this court's decision of the initial recusal motion, *In re IBM*, 618 F.2d 923 (2nd Cir.1980), it never ruled on the second motion to disqualify. *In re IBM*, 687 F.2d 591 (2nd Cir.1982).

5) comments to The Wall Street Journal.

During a hearing before this court, counsel for IBM averred that "in any [matter] in which IBM is involved, this court should recuse itself." (December 9, 1988 Tr. at 12–13). The affidavit dated December 19, 1988 contains acts which had already occurred before IBM brought its second recusal motion in May of 1982.[3] Thus, there are no new relevant factors at issue in the instant recusal motion that were not previously considered by this Court.

Recognizing the duplicative nature of this motion, the court asked counsel for IBM, "do you have any more reasons for seeking a recusal [in the instant case] than you did in your very extensive documents furnished to the Court of Appeals on an earlier occasion?" In response, counsel for IBM answered in the negative. (December 9, 1989 Tr. at 10). Accordingly, this court stated "Then I can't see for the moment how I can in good conscience and fairness recuse myself now for grounds that you may urge which [are] substantially similar." (December 9, 1989 Tr. at 11). Therefore, relying on the reasoning of earlier opinions and examining these factors anew, I find that recusal in this case is unwarranted merely because IBM is involved.

## II. Section 455(b)(1)

Defendant further alleges that this Court should be disqualified pursuant to 28 U.S.C. §§ 144 and 455(b)(1) and the fifth amendment.[4] Defendant suggests that personal bias and prejudice against IBM is demonstrated by conduct "outside the courtroom, such as granting newspaper interviews attacking the dismissal of *United States v. IBM.*" Defendant maintains that this conduct was in no way related to the Court's duties and therefore extrajudicial. IBM has made no showing that the complained of conduct had its source in extrajudicial bias. It merely offers the judicial acts and statements and maintains that such conduct implicates extrajudicial bias.

Defendant's interpretation of the term does not comport with the definition of "extrajudicial conduct" recognized in this Circuit: alleged extrajudicial prejudice "must arise by virtue of some factor which creates partiality arising outside of the events which occur in the trial itself. The Supreme Court has held 'the alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from his participation in the case.' ". *In re International Business Machines Corp.*, 618 F.2d 923, 928 (2d Cir. 1980) quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

Although IBM apparently recognizes that alleged prejudice of the trial judge must be extrajudicial, mere allegation that conduct is extrajudicial does not make it so. Extrajudicial conduct is not conduct arising geographically *outside* of the courtroom. Rather, it is conduct which arises from something outside of the events of the trial itself. Conduct of this Court alleged by IBM to be extrajudicial, e.g. seeking to retain jurisdiction of the litigation, clearly arose directly from the long involvement with the IBM litigation. As stated in an earlier IBM opinion, "observations and comments by the court were based upon the court's judicial observations during this case." *United States v. IBM*, 539 F.Supp. 473, 478 (S.D.N.Y.1982). Moreover, as the Court of Appeals earlier noted "IBM has not shown and does not purport to establish or identify any personal connection, relationship or extrajudicial incident which accounts for the alleged personal animus of the trial judge." *In re IBM*, 618 F.2d at 928. IBM's claim of prejudice was repeatedly held to form no basis for a finding

---

**3.** The complained of conduct took place during the period of time following dismissal of the action. For example, the Wall Street Journal article is dated January 26, 1982 and the New York Times article appeared on April 1, 1982, both prior to the filing of the second recusal motion on May 17, 1982.

**4.** Section 455(b)(1) requires disqualification of a judge:

> "where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

of extrajudicial bias. *Id.* Because IBM's claim of prejudice in the instant case cites no factors beyond those noted in the previous recusal motions, the same conclusion would lie with these facts.[5]

Therefore, whether examined individually or in the aggregate, IBM's allegations demonstrate no extrajudicial bias or prejudice on the part of this Court. Now, as before, "this court has no interest in the outcome of this case other than the interest of every judicial officer that the truth be discovered and the law correctly applied." *U.S. v. IBM,* 475 F.Supp. 1372 at 1391. (S.D.N.Y.1979)

Accordingly, IBM's request that this Court disqualify itself pursuant to 28 U.S.C. §§ 144 and 455, and the fifth amendment of the United States Constitution is denied.

### CONCLUSION

For the reasons stated above, defendant's motion to disqualify is denied.

SO ORDERED.

---

5. As to those alleged incidents of "biased and prejudicial behavior on the part of Judge Edelstein [which] took place inside the courtroom", e.g., the interruption and questioning of witnesses, the earlier opinion of the Court of Appeals is controlling. *See In re IBM,* 618 F.2d 923.

Moreover, although the Court of Appeals never reached the issue of recusal in the second motion, this court relies on its previous decisions on this matter as sound analysis of what are essentially identical allegations.