**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 6 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DENNIS GARBERG & ASSOCIATES, INC., )
)
    Plaintiff-Appellee, )
)
v. )    No. 95-3160
)
PACK-TECH INTERNATIONAL CORPORATION )
and SUNFLOWER TECHNOLOGIES, LTD., )
)
    Defendants-Appellants. )

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 94-CV-2246)

---

Louis A. Huber, III (Frank W. Lipsman and Jacqueline M. King with him on the brief), of Bryan Cave LLP, Kansas City, Missouri, for Plaintiff-Appellee.

John M. McFarland (Michael S. Dodig with him on the brief), of Gage & Tucker L.C., Overland Park, Kansas, for Defendants-Appellants.

---

Before **TACHA, GODBOLD,**[*] and **HOLLOWAY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

   [*]Honorable John C. Godbold, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

This is an appeal from a default judgment for $2,292,428.73 in a diversity case involving claims for breach of contract, guaranty, express warranty, implied warranty of merchantability, implied duty of fitness for particular purpose, negligent misrepresentation, fraudulent misrepresentation, conspiracy and replevin. The district court's jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332(a)(2), and we have jurisdiction of this appeal under 28 U.S.C. § 1291.

## I

Defendants are both Canadian corporations; Sunflower Technologies is described as a "sister" company of Pack-Tech International. Plaintiff Dennis Garberg & Associates, Inc. (Garberg) is a Kansas company. Plaintiff entered into a contract with one of the defendants for the manufacture of a prototype machine referred to as Model 9000. The Model 9000 machines were to be designed to take sheets of plastic film and manufacture newspaper bags with pocket enclosures for promotional samples of products and to insert the sample into the sealed pocket. The contract set a purchase price for the prototype, with a lower price to be charged for additional machines, if ordered. The contract also called for the first defendant to operate the machines in Canada to fill orders for plaintiff's customers. The operations portion of the contract was later vacated when the plaintiff entered into a contract with the second defendant for it to perform the operations. In the remainder of this opinion we will refer to defendants generally since it seems to be immaterial to the issues on appeal to differentiate between them.

Within about four months from the date of the initial contract, plaintiff had ordered a total of ten machines. About two months later, plaintiff completed payment of the purchase price of the first five machines and sent partial payment for the remaining five. The amount owed under the contract for purchase of those five machines is apparently slightly less than $95,000, plus accumulating interest.

Defendants allegedly could not get the machines to perform as desired. They allege that their performance of the contract was hindered by other factors, including delays in getting raw materials and product samples to be packaged, as well as unanticipated demands from plaintiff for extremely fast production of large orders. In any event, plaintiff was dissatisfied with defendants' difficulties in filling orders. Plaintiff Garberg gave notice of intent to terminate the contracts and demanded delivery of the machines, which were to belong to it under the contract,[1] but for which it had not completely paid.

---

[1]Under the contract, the machines were to remain in defendants' possession in Canada until termination of the contract by either party on 150 days' notice. By the end of the 150-day period, defendants were to have shipped the machines to Kansas, and plaintiff was to reimburse defendants for shipment of the machines. Aplt. App. at 32.

The demand for delivery to plaintiff Garberg of the Model 9000s was stated to have been made on June 12, 1994, by a letter from plaintiff to defendant Pack-Tech. See Affidavit by Ms. Tate, Vice-President-Finance and Chief Financial Officer of Garberg. Supp. App. at 24. The contract provides, Sec. 2.10, that within the 150-day period specified in the notice of termination, Pack-Tech will complete work in progress, prepare the machines for shipment and arrange their delivery pursuant to plaintiff's directions, *inter alia*. Sec. 2.11 provides that plaintiff, after receiving the machines, will reimburse Pack-Tech for documented expenses and make final payment on specified costs. Aplt. App. at 32-33.

Thus, for the 150-day period after the June 12, 1994, notice and demand, Pack-Tech had the right to possession of the machines to complete its performance. The

## II

Defendants refused to deliver the machines without payment in full and Garberg filed suit on June 16, 1994, asserting the claims enumerated above. Defendants responded to service of the original complaint by threatening to sell the machines if the suit was not dismissed. Defendants also threatened to release to the public a prototype ziplock bag which plaintiff had obtained from a third-party subject to a confidentiality agreement. Release of that item allegedly would have exposed plaintiff to substantial liability to the third-party. Plaintiff then filed an amended complaint on July 12, 1994, adding a count of replevin to recover the prototype bag.

Plaintiffs also filed on July 12 a motion for preliminary injunctive relief and an application for a restraining order prohibiting defendants from interfering with plaintiff's recovery of personal property (the machines) or alternatively a restraining order protecting personal property during the pendency of the litigation, citing Kan. Stat. Ann. § 60-1005(b). This application sought the "return" of the ten Model 9000 machines for "repair or redesign." Alternatively, plaintiff asked for a restraining order to ensure the preservation of the property during the litigation, but also suggested that as part of this relief the court should permit

---

conditions imposed by the court before defendants' personal jurisdiction motion would be considered required return by October 1, 1994 of the machines to plaintiff in Kansas, substantially altering conditions existing under the agreement in that not until the end of the 150-day period (November 9, 1994), would plaintiff have been entitled to delivery of the machines in Kansas, and then at plaintiff's expense. As explained in Part III-B, to condition any consideration of the motion raising jurisdiction of the person as the court did, was an abuse of discretion and error.

4

plaintiff "access to the Model 9000s in an effort to repair and redesign them for use . . . ." Plaintiff offered to file with the district court a letter of credit for $100,000 to secure payment of the balance of the purchase price which it admittedly owed.

On July 15, 1994, defendants' Canadian solicitor faxed a letter to the judge adamantly stating that defendants would not submit to the jurisdiction of the court in Kansas. A hearing was set for July 18, 1994, on the requests for a restraining order and injunctive relief. Defendants did not appear at the hearing on July 18. Plaintiff filed a memorandum setting out its contentions to support jurisdiction over the defendants. At the July 18 hearing, the court issued a restraining order directing the return of the prototype ziplock bag and, to preserve the status quo pending a hearing on the remainder of plaintiff's application, restraining defendants from transferring or disassembling the machines. The order also required defendants to "allow [plaintiff] access" to the ten machines and set a hearing for August 19 on plaintiff's motion for a preliminary injunction.

On July 20, 1994, a Canadian bailiff appeared at defendants' premises with a copy of the restraining order and demanded possession of the prototype bag and access to view the machines. The order was served on one of defendants' principals, Gerard Davoren, whose first response was to tell the bailiff that he was going to call his attorney for advice. Mr. Davoren then told the bailiff that on advice of counsel, he would not obey the order and asked the bailiff to leave the premises. Aplt App. at 60-61. Defendants' answer date of July 25, 1994, passed without defendants appearing in the case. On August 4, plaintiff filed

5

a motion for contempt based on defendants' refusal to deliver the prototype bag and their refusal to allow access to the machines, and a motion for a default judgment.

Those motions were heard at the August 19, 1994, hearing already scheduled on the motion for a preliminary injunction. Defendants appeared through counsel at that hearing, arguing against default and orally seeking leave to file a motion to dismiss for lack of personal jurisdiction. Plaintiff argued for entry of default or, alternatively, a citation for contempt and an order that the machines be delivered to plaintiff in Kansas at defendants' expense. The court ruled that defendants would be allowed to file their motion to dismiss for lack of jurisdiction but directed counsel to prepare an order setting out conditions for denial of the motion for entry of default. That order was entered on September 12, 1994. Defendants' motion to dismiss was filed on August 26, one week after counsel's appearance at the hearing.

The September 12, 1994, order stated that the court "will grant Defendants' motion to deny Plaintiff's motion for entry of default judgment and consider Defendants' motion to dismiss for lack of personal jurisdiction <u>on condition that, no later than October 1, 1994,</u>" (emphasis added), the ziplock bag be returned and that the defendants deliver the machines to plaintiff in Kansas at defendants' expense, including sending employees to assemble the machines to an operating condition after transport, if they were disassembled for transport. Aplt. App. at 122-125. Defendants were ordered to pay over $4,000 in costs and attorneys' fees to plaintiff for the expense of the contempt motion, but otherwise the order made no

6

findings or rulings on the contempt motion. The order also provided that defendants could move in good faith for an extension of the October 1 deadline for performance of the conditions. The order concluded with a provision that failure by the defendants to timely satisfy all the conditions would result in the court taking up the plaintiff's motion for default judgment. No determination on the court's jurisdiction over the Canadian defendants was made in the order of September 12, 1994.

On September 28, 1994, defendants applied for an extension of time for performance of the conditions. Plaintiff opposed any extension and asked, in the alternative, that any extension be conditioned on defendants' reimbursing plaintiff for its expense in leasing space at which to store the machines and $90 for attorneys' fees caused by the request for the extension. On September 30, the court ordered that defendants could have an extension of time to October 17 only on satisfaction of the conditions requested by plaintiff. By letter of October 11, defendants informed plaintiff that they would not comply because they believed the conditions were punitive and unjustifiable. In a second letter of October 17, defendants said they would pay the $4,600 in attorneys' fees and service costs sought by plaintiff in the earlier contempt application as required by the September 12 order, if plaintiff would stipulate that this reimbursement was not a waiver of defendants' personal jurisdiction defense or of any other claims or defenses. (The defendants by this time had returned the prototype bag.) Plaintiff refused to stipulate as requested.

Plaintiff renewed its motion for judgment by default, based on defendants' failure to

plead responsively and failure to meet the conditions of the orders of September 12 and September 30. In an order of November 30, 1994, the court ruled that the defendants' solicitor's July 15, 1994, letter, noted above, was not a motion under the rules and therefore not a response to the complaint; that defendants had willfully failed to comply with the conditions in the orders of September 12 and 30, 1994; that defendants' motion to dismiss was "moot" because the court had conditioned consideration of the motion on performance of the unsatisfied conditions; that the motion to dismiss "appear[ed] to be without merit"; and that the motion for judgment by default should be granted. As to the motion to dismiss, the court order expressed no reasons for its statement that the motion "appears to be without merit," but cited two district court decisions on Kansas long-arm jurisdiction.[2] Aplt. App. at 255.

The court later held a hearing on damages and awarded plaintiff $2,292,428.73 severally against each defendant (with total recovery not to exceed said sum) and granted an order of replevin requiring defendants to deliver the ten machines to plaintiff at defendants' expense. Defendants filed a motion for relief from the default judgment under Fed. R. Civ. P. 60(b) within ten days from the entry of judgment, and commenced this appeal after the district court's denial of that motion. Because the Rule 60 motion was filed within

---

[2]See Serrano, Inc. v. SLM Int'l, Inc., 1994 WL 68510 (D. Kan. 1994) (the court found Serrano had met burden of a *prima facie* showing that defendant was subject to Kansas long-arm jurisdiction where party entered into contract to be performed in whole or in part by either party in Kansas); and Carrothers Construction Co. v. Quality Service and Supply, Inc., 586 F. Supp. 134 (D. Kan. 1984) (same).

ten days, defendants have preserved their right to appeal the underlying judgment and orders which preceded the judgment, as well as the denial of their Rule 60 motion. Fed. R. App. P. 4(a)(4)(F).

## III

### A

We will consider first defendants' contention that the district court erred by entering judgment by default without having first determined whether it had jurisdiction over the defendants. Defendants' focus is on the contention that the district court exceeded its "jurisdiction to determine jurisdiction." Defendants say that we are presented with a jurisdictional issue subject to *de novo* review.

We believe that the threshold question more precisely is the validity of the default judgment which is appealed. Decisions to enter judgment by default are committed to the district court's sound discretion, and our review is for abuse of discretion. Ruplinger v. Rains (In re Rains), 946 F.2d 731, 732 (10th Cir. 1991). However, a decision based on an erroneous view of the law is an abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

We conclude that the default judgment must be reversed. We have noted earlier that judgment by default should not be entered without a determination that the court has jurisdiction over the defendant. Williams v. Life Savings and Loan, 802 F.2d 1200, 1203 (10th Cir. 1986); United States v. 51 Pieces of Real Property, 17 F.3d 1306, 1309 (10th Cir.

9

1994). In <u>Williams</u> we explained that:

> Defects in personal jurisdiction, however, are not waived by default when a party fails to appear or to respond . . . .
>
> . . . Thus, when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, <u>the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties. In reviewing its personal jurisdiction, the court . . . exercises its responsibility to determine that it has the power to enter the default judgment.</u>

802 F. 2d at 1202-03 (emphasis added).

We adhere to this reasoning and hold that a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case. We are convinced that in the instant case the district court was required to determine the personal jurisdiction issue before considering entry of the default judgment and erred by failing to do so. This conclusion is, furthermore, consistent with our holding in <u>Venable v. Haislip</u>, 721 F.2d 297, 300 (10th Cir. 1983), that where the district court does not have jurisdiction over the defendant, the court must grant relief from a default judgment under Fed. R. Civ. P. 60(b).

The district judge's Memorandum and Order of November 30, 1994, noted earlier, is the crucial order which premised the entry of the default judgment before us. Aplt. App. at 250-255. That order stated that "[t]his matter is before the court on plaintiff Dennis Garberg & Associates' Renewed Motion for Entry of a Judgment by Default (Doc. 31)." <u>Id.</u> at 250. The order said that the plaintiff renews its previous motion for default judgment on the grounds that (a) defendants have failed to timely respond to the complaint, and (b) defendants

10

have failed to comply with the conditions in the court's orders of September 12 and September 30.

The November 30, 1994, order stated further that the court "has examined the parties' submissions" and the law and was prepared to rule and that for reasons given below "plaintiff's motion [for default judgment] is granted." Id. at 250. Those reasons recited were that defendants concede no formal response to the first amended complaint was filed, and that defendants failed to comply with the court's September 12 and 30, 1994, orders requiring defendants to deliver the Model 9000 packaging machines and to reimburse plaintiff for certain attorneys' fees and expenses.

The November 30, 1994, order found that the defendants' Canadian solicitor's July 15, 1994, letter to the judge did not constitute a motion due to failure to comply with Fed. R. Civ. P. 7(b)(1) and (3), and with the Kansas federal Local Rules. We need not deal with that question because after the July 15, 1994, letter was sent to him, the district judge by his order of September 12 denied plaintiff's motion for default judgment and stated he "would consider Defendants' motion to dismiss for lack of personal jurisdiction on condition that, no later than October 1, 1994, Defendants comply with the following:" return the ziplock bag, deliver to plaintiff at Overland Park, Kansas the 10 model 9000 packaging machines, pay the cost of hiring trucks and drivers to make the delivery, and pay $4,463.70 as attorneys' fee. Aplt. App. at 125 (emphasis added). The order concluded that failure to timely satisfy all the conditions would result in the court taking up the motion for default

11

judgment. Id. at 126. An extension for compliance with the order was granted on further conditions, but the district court's November 30, 1994, order granted the default judgment sought because of failure of defendants to meet the conditions imposed before the defendants' motion to dismiss for lack of jurisdiction would be considered. The court's November 30, 1994, order concluded:

> IT IS THEREFORE ORDERED that plaintiff's Renewed Motion for Entry of Judgment by Default (Doc. #31) is granted.
>
> IT IS FURTHER ORDERED that defendants' Motion to Dismiss (Doc. #23) is denied as moot inasmuch as we conditioned our consideration of defendants' Motion to Dismiss on defendants' compliance with certain conditions enumerated in our September 12 order, and plaintiff has failed to comply with those conditions. Moreover, the motion itself appears to be without merit. See Serrano, Inc., v. SLM Int'l, Inc., No. 93-2468, 1994 WL 68510 (D. Kan., Feb. 18, 1994); Carrothers Construction Co. v. Quality Service and Supply, Inc., 586 F. Supp. 134 (D. Kan. 1984).

Aplt. App. at 254-55.

The dissent repeatedly argues, as it must to attempt to sustain this default judgment, that "the district court adequately resolved the jurisdictional issue before entering a default judgment." Dissent slip op. at 1; see also id. at 2, 3 ("the court 'look[ed] into its jurisdiction' and 'determined' that it ha[d] the power to enter a default judgment. Williams, 802 F.2d at 1202-03."). Such a determination was precisely what was required by Williams and our other precedents. However, to the contrary, the November 30 order and this record as a whole show that the judge explicitly rejected the defendants' challenge to personal jurisdiction "as moot" (emphasis added) for failure to comply with his September 12 and September 30

12

orders, without making a determination on his power to enter the default judgment as required by our Williams (802 F.2d at 1202-03), Venable (721 F.2d at 300), and 51 Pieces of Real Property (17 F.3d at 1309), cases. The added observation that "[m]oreover, the motion itself appears to be without merit" made no findings or jurisdictional determination on the evidence before the judge and cannot fairly be read as a determination on the issue of personal jurisdiction over defendants.

We are convinced that before the entry of the $2,292,428 default judgment, the court did not perform its "affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams, 802 F.2d at 1203. The cases cited by the district judge show clearly that two basic determinations are required to decide the personal jurisdiction issue: (1) whether the court has jurisdiction over the defendants under the Kansas long-arm statute, and, if so, (2) whether the defendants have sufficient minimum contacts with the forum state to comport with the constitutional guarantee of due process. Carrothers Construction Co., 586 F. Supp. at 135. It is true that the plaintiff need only make a *prima facie* showing on these two questions if the motion is decided only on the basis of the parties' affidavits and other written materials. FDIC v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992). Eventually, of course, plaintiff must prove the jurisdictional facts, if disputed, by a preponderance of the evidence. Id. Here these critical determinations simply were not made; instead the judge relied on mootness of the defendants' motion to dismiss and his finding of failure to comply with conditions he imposed before he would consider the defendants'

13

motion to dismiss or make the critical jurisdictional determination.  Accordingly, we must hold that the proper procedure for entry of such a default judgment was not followed and thus it was error and an abuse of discretion to enter the default judgment.

**B**

Plaintiff contends that the default judgment was nevertheless proper as a sanction for the defendants' failure to comply with the conditions imposed by the district judge in his orders of September 12 and September 30, 1994, requiring delivery of the machines to the plaintiff in Kansas, *inter alia*.  Brief of Appellee at 28-30.  Plaintiff relies on United States v. I.B.M., 539 F. Supp. 473, 476 (S.D.N.Y. 1982), and other cases, for the proposition that a court order to preserve the status quo must be observed until the court's jurisdiction is determined.

Undoubtedly the district court had jurisdiction to determine its jurisdiction.  See Oklahoma Tax Commission v. Graham, 822 F.2d 951, 955 (10th Cir.) (jurisdiction to determine subject matter jurisdiction), vacated on other grounds, 484 U.S. 973 (1987).  In the proper exercise of this jurisdiction, the court had the power to issue a temporary order "for the purpose of preserving existing conditions pending a decision upon its own jurisdiction." United States v. United Mine Workers, 330 U.S. 258, 290 (1947).[4]  Here the

---

[4]In such circumstances, the district court also has the power to enforce orders for discovery directed toward establishing facts needed to decide the jurisdictional issue. Insurance Corp. of Ireland v. Compagnie des Bauxites, 456 U.S. 694, 700 (1982).  That power of the district court was not invoked in this case and is not material to the issues before us.

14

court's order of September 12, 1994, however, went far beyond preserving the status quo. We are constrained to agree with the defendants' contention that the order, instead of preserving "existing conditions," dramatically altered them. Under the order of July 18, 1994, defendants were restrained from transferring or otherwise disposing of the machines. Then, by the order of September 12, they were commanded to deliver the machines to Kansas at their own expense and to reassemble the machines on delivery. We are convinced that under the circumstances, it was an abuse of discretion to require the defendants to deliver the machines to Kansas. The court, as we have already noted, improperly conditioned its consideration of the defendants' personal jurisdiction defense on performance of these excessive conditions. The performance commanded would have drastically altered the existing conditions, not preserved the status quo ante. Thus plaintiff's reliance on I.B.M. and United Mine Workers and similar cases is misplaced because the order in question here was not fashioned to preserve the existing conditions.

Nor can the September 12 order be upheld as an order for prejudgment replevin. Replevin is a possessory action, in which the plaintiff must show his ownership of the property and his right to immediate possession in order to be entitled to replevin under the Kansas statutes. Herl v. State Bank, 403 P.2d 110, 114 (Kan. 1965). Here it is clear that title to the machines was in the plaintiff, Aplt. App. at 33, but the defendants had the right to immediate and continuing possession of the machines for performance of the contract. The contract provisions on termination required 150 days' notice by either party. Aplt. App. at

15

32.[5] Neither in the district court nor in this court has plaintiff identified contractual language to support its demand for immediate possession.

Because the district court erred by imposing the conditions that the defendants by October 1, 1994, deliver the machines to Kansas at the defendants' expense, the order commanding these changed conditions is not supported by United Mine Workers and similar cases. Nor is the order of the district court here supported by plaintiff's I.B.M. case which held, 539 F. Supp. at 476, that a district court has the power to determine if it has the capacity to decide the merits of a case, and that the court's orders preserving the status quo must be obeyed until the determination of jurisdiction, noting however that United Mine Workers did state that "a different result would follow were the question of jurisdiction frivolous and not substantial . . . ." 330 U.S. at 293. As we have held, the orders in question did not preserve the "existing conditions."

Moreover the plaintiff's defense of the default judgment as a proper sanction for not complying with the conditions imposed by the district court's September 12 and September 30 orders likewise fails. As we have held, those orders were not justified under the court's authority as recognized in United Mine Workers, 330 U.S. at 290, because they were plainly not fashioned to preserve "existing conditions." United Mine Workers clearly states that:

_____

[5]As noted earlier, the defendants were obligated by the contract to deliver the machines to the plaintiff in Kansas by the end of the 150-day notice, and the plaintiff was obligated to reimburse the defendants for their expenses of delivery.

16

It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order. The right to remedial relief falls with an injunction which events prove was erroneously issued, Worden v. Searls, [121 U.S.], at 25, 26; Salvage Process Corp. v. Acme Tank Cleaning Process Corp., 86 F.2d 727 (1936); S. Anargyros v. Anargyros & Co., 191 F. 208 (1911) . . . .

330 U.S. at 294-95 (emphasis added). Accordingly, since the orders imposing the conditions for delivery of the machines to Kansas at the defendants' expense did not preserve existing conditions and were unjustified, the right to any remedial relief in the default judgment must fall.

Finally, the plaintiff argues that the conditions imposed by the district court here were supported by authorities recognizing the imaginative and flexible use of power to impose conditions on the granting of relief from a default judgment. See 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d, § 2700 (1983). We do not disagree with the general principle on which plaintiff relies; we cannot agree, however, that the district court's order in question here can be upheld on this basis. The district judge's order simply went too far. In the first place, as already explained the district court had a clear threshold duty to determine its jurisdiction over the defendants. The court refused to consider the defendants' motion to dismiss, which challenged jurisdiction of the person, Aplt. App. at 68-69, stating it "is denied as moot" (emphasis added), because of noncompliance with the order of September 12 which commanded delivery of the machines to Kansas at defendants' expense, *inter alia*. Those conditions not being fashioned to preserve the status quo but

17

instead to drastically alter "existing conditions," and the court's duty to make a threshold determination of its jurisdiction over the defendants not being performed, we reject this final effort of plaintiff to uphold the default judgment.[6]

Accordingly, the default judgment is **REVERSED** and the cause is **REMANDED** for further proceedings in accord with this opinion.

---

[6]We note that when the district court imposed the conditions in the order of September 12, neither entry of default nor of default judgment had occurred.  It is particularly significant that judgment had not yet been entered, for it is well established that the good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b).  E.g., E.E.O.C. v. Mike Smith Pontiac GMC, Inc., (2d Cir. 1981).  Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).

Thus, while we do not disagree with the dissent that the district court had some discretion to impose conditions necessary to rectify any prejudice suffered by the plaintiff, dissent slip op. at 4, the extreme conditions of the district court's order did much more than relieve the plaintiff of the consequences of the defendants' twenty-five day delay in filing their motion to dismiss.  Indeed, the district court's conditions also included much more limited provisions, from which defendants have not appealed, which directly and, it appears, appropriately addressed this valid concern.  Defendants were ordered to pay costs and attorney fees of some $4,000 to compensate the plaintiff for the expense of making its original default motion.

We are convinced that the conditions actually imposed far exceeded what was necessary to achieve the limited ends cited by the dissent.

95-3160, Garberg v. Pack-Tech Int'l Corp.

Tacha, J., dissenting:


Today the majority reverses a default judgment, granted only after defendants failed to satisfy certain conditions imposed by the district court, on the unwarranted ground that the district court did not properly determine its jurisdiction before granting the motion for entry of default. In my view, the district court adequately resolved the jurisdictional issue before entering a default judgment. Equally troubling, the majority holds that a district court, faced with a defendant's willful refusal to timely file a responsive pleading, is not free to impose conditions that are designed to mitigate prejudice to the nondefaulting plaintiff. This is so even though the conditions primarily benefit the defendant by allowing the defendant to enter the litigation and avoid the harsh consequences of a default judgment. Because I disagree with both of the majority's conclusions, I respectfully dissent.

**I**

In <u>Williams</u>, 802 F.2d at 1203, we held that before entering a default judgment, a court has "an affirmative duty to look into its jurisdiction both over the subject matter and the parties." I am satisfied that the district court adequately performed that duty in this case. In its November 30, 1994 order granting plaintiff's motion for judgment by default, the district court demonstrated that it considered the question of personal jurisdiction and concluded that the requirements for personal jurisdiction had been met.

In the order, the district court denied defendants' motion to dismiss for lack of personal jurisdiction, stating that "[W]e conditioned our consideration of defendants' Motion to Dismiss on defendants' compliance with certain conditions . . . and [defendants have] failed to comply with those conditions." Applt. App., at 254-55. More importantly for our analysis, the court then stated, "Moreover, the motion itself appears to be without merit." Id. at 255. Immediately following this statement, the court cited two of its own prior decisions in which the court concluded that the plaintiff satisfied its burden of making a prima facie showing of personal jurisdiction. Not coincidentally, these cases involved situations virtually identical to this case: a Canadian defendant entered into a contract to be performed in whole or in part in Kansas. Id. (citing Serrano, Inc., v. SLM Int'l, Inc., No. 93-2468-EEO, 1994 WL 68510 (D. Kan., Feb. 18, 1994); Carrothers Constr. Co. v. Quality Serv. & Supply, Inc., 586 F. Supp. 134 (D. Kan 1984)). In addition, the parties fully briefed the question of personal jurisdiction, and the court stated it had "examined the parties' submissions." Applt. App., at 250. Under these circumstances, I would conclude that the court adequately performed its duty of determining its jurisdiction before granting the motion for entry of default.

In concluding that the district court failed to determine its jurisdiction, the majority states that the court's order "made no reference to the facts and evidence before the judge on long-arm jurisdiction and no findings thereon." Maj. op., at 12. While I agree that a fuller and perhaps clearer statement of the district court's conclusion would have been helpful, I

2

do not agree that the lack of such a statement is fatal under Williams. The district court's November 30, 1994 order clearly demonstrates that the court "look[ed] into [its] jurisdiction" and "determine[d] that it ha[d] the power" to enter a default judgment. Williams, 802 F.2d at 1202-03. Williams does not require more, especially when the question of personal jurisdiction is frivolous and not substantial, as was the case here. By virtue of their purposeful contacts with the forum state, defendant Pack-Tech International and its sister company, defendant Sunflower Technologies, clearly fall within the reach of the Kansas long-arm statute, and the district court's exercise of jurisdiction over the two companies is consistent with the constitutional requirements of due process.

The majority makes much of the fact that the district court refused to consider defendants' motion to dismiss for lack of personal jurisdiction because defendants failed to satisfy the conditions imposed by the court. But under Williams, as long as the district court at some point resolved the question of personal jurisdiction before entering a default judgment, the court's refusal to consider defendants' motion to dismiss is irrelevant, and the entry of default judgment should be affirmed absent an abuse of discretion.

## II

I also disagree that the district court abused its discretion by placing conditions on defendants that went beyond "preserving existing conditions pending a decision upon its own jurisdiction." United States v. United Mine Workers, 330 U.S. 258, 290 (1947). Apparently, the majority concludes that because the district court had not determined its jurisdiction over

3

defendants when it imposed the conditions, the court was not free at that time to impose the type of "imaginative and flexible" conditions that are recognized as within the power of a court to grant relief from a default judgment under Federal Rules of Civil Procedure 55(c) and 60(b). See 10 Charles Allen Wright et al., Federal Practice and Procedure § 2700 (2d ed. 1983). The district court erred, the majority concludes, because the conditions the court imposed "went far beyond preserving the status quo." Maj. op., at 14.

I disagree that the conditions imposed by the district court in this situation should be limited, under the standard of United Mine Workers, 330 U.S. at 290, to "preserving existing conditions." Rather, the appropriate standard for placing conditions on denying or vacating entry of default is whether the conditions, in the discretion of the trial court, are necessary "to rectify any prejudice suffered by the nondefaulting party as a result of the default and the subsequent reopening of the litigation." 10 Wright et al., § 2700; see Littlefield v. Walt Flanagan & Co., 498 F.2d 1133, 1136 (10th Cir. 1974) ("The imposition of conditions in an order vacating a default is a device frequently used to mitigate any prejudice which plaintiff may suffer by allowing defendants to plead.").

The majority erroneously applies the standard of United Mine Workers for several reasons. First, in United Mine Workers, the defendant properly challenged the court's jurisdiction. In this case, defendants failed to file their motion to dismiss for lack of personal jurisdiction within the time period for filing a responsive pleading. Second, because the defendants in United Mine Workers properly challenged the court's jurisdiction, United Mine

4

Workers did not involve a defaulting defendant or the imposition of conditions on the court's denial of entry of default. Instead, it involved a trial court's issuance of preliminary orders under the rubric of a court's "jurisdiction to determine jurisdiction." See id. Finally, in United Mine Workers failure to follow the court's orders was punishable by criminal contempt. Id. at 293. In this case by contrast, defendants were free to choose whether to satisfy the conditions imposed by the district court and could not be punished beyond the court's entry of default. The district court, of course, could have entered a default judgment against defendants the moment they failed to file a responsive pleading. This demonstrates that defendants were in no way prejudiced by the imposition of the conditions.

Although the power of a district court to issue preliminary orders under the exercise of its "jurisdiction to determine jurisdiction" is limited to issuing orders that preserve the status quo, United Mine Workers, 330 U.S. at 290, a court's power to impose conditions on the denial of entry of default has never been so limited. In my view, this is so because the concerns that caused the Supreme Court to limit a court's power in United Mine Workers simply are not present in the case before us. The majority does not explain why the imposition of conditions on the denial of entry of default should be treated the same as the issuance of orders enforceable by criminal contempt.

In this case, defendants failed to comply with the federal rules and file an appropriate challenge to the district court's jurisdiction within the time period for filing a responsive pleading. As the district court concluded, the letter from Canadian counsel failed to satisfy

5

the requirements of Federal Rule of Civil Procedure 7(b) and the Local Rules of the District Court. Further, the text of the letter makes clear that defendants were on notice of the action and were acting in disregard of the authority of the court. The district court went out of its way to try to avoid a default judgment. To protect plaintiff from defendants' delay and ultimate default, the district court conditioned its denial of entry of default on defendants' performance of certain conditions. After eventually concluding that entry of default was appropriate given defendants' willful failure to satisfy the conditions imposed, the court performed the necessary task of looking into its jurisdiction before granting the default judgment.

In this situation, where a district court imposes conditions on the entry of default and such conditions are clearly designed to mitigate prejudice to the nondefaulting plaintiff while at the same time allowing the defendant to avoid a default judgment, appellate review should be limited to determining whether the conditions are arbitrary or an abuse of discretion. See 10 Wright et al., § 2700. The district courts are in the trenches and are best informed about the facts and equities of the case before them. As such, they are best able to assess the prejudice faced by a nondefaulting plaintiff and to fashion conditions to protect the plaintiff, while allowing cases to be heard on the merits. Because the majority's approach unduly restricts the power of district courts to accomplish this purpose, I respectfully dissent. I would affirm the order of the district court.