**Ruggero D'ONOFRIO, Plaintiff,**

v.

**IL MATTINO, et al., Defendants.**

**Civil Action No. 03–CV–6705.**

United States District Court, E.D. Pennsylvania.

April 27, 2006.

Rudolph J. Di Massa, Di Massa and Associates, Ltd., Philadelphia, PA, for Plaintiff.

Joseph M. Donley, Kittredge, Donley, Elson, Fullem & Embick, LLP, Philadelphia, PA, for Defendants.

## *MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

### I. INTRODUCTION

Plaintiff Ruggero D'Onofrio ("D'Onofrio") filed this suit on December 12, 2003 against twenty-two Italian newspapers and radio and television stations. He alleges that from December 2, 1995 through December 12, 2001, the Defendants "jointly and severally engaged in a dastardly inquisition more offensive to honor and liberty than any other in recent history" and seeks damages of over $26 million. (Compl.¶ 3–8.) D'Onofrio's counseled complaint, generously read, included claims for defamation, false arrest ("via the Carabinieri"), false imprisonment ("by the Italian authorities"), fraud, and violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (Compl.¶ 21–33.)

Currently before me is Plaintiff's Motion for Judgment by Default against Defendants Il Mattino, Il Sannio, and Messaggero Veneto. For the reasons set forth below, I will deny Plaintiff's motion for default judgment. Instead, I will dismiss Plaintiff's claims against Defendants

Il Mattino and Il Sannio for lack of personal jurisdiction. Finally, I will dismiss Plaintiff's claims against Defendants Roma and Unita for lack of prosecution.

## II. FACTS AND PROCEDURAL HISTORY

In his complaint, D'Onofrio alleges that while he was on a CIA mission to Italy, all twenty-two named defendants defamed him by accusing him, *inter alia*, of having Mafia connections, laundering money through the Vatican bank, running gold, drugs and guns, selling nuclear weapons to enemies of the United States, ordering the murder of an Italian intelligence agent, poisoning Pope John Paul I, and assassinating Israeli Prime Minister Yitzhak Rabin. He alleges that this defamation led to his arrest and imprisonment by Italian authorities. D'Onofrio alleges that the Defendants' acts occurred between December 2, 1995 and December 12, 2001, but he does not identify any particular acts of defamation attributable to the Defendants.

On October 18, 2004, I granted the motion of Defendants Il Corriere della Sera, La Stampa, Il Messaggero, Il Foglio, and La Repubblica to dismiss for lack of personal jurisdiction. Subsequently, Defendants RAI–1 Television Newscast and Special Services, RAI–2 Television Newscast–Compania, RAI–3 National and Regional Television Newscast and Special Services, and RAI–1 Radio Transmissions (collectively, "the RAI Defendants"), as well as Defendants Channel 4–Television Newcasts, Channel 5–Television Newscasts, and Italia 1–Television Newscasts (collec-

tively, "the RTI Defendants") filed motions to dismiss based on lack of personal jurisdiction, *forum non conveniens*, insufficient service of process, and failure to state a claim due to expiration of the statute of limitations.

On June 17, 2005, I granted the motions to dismiss of the RAI and RTI Defendants. In granting these motions, I first dismissed D'Onofrio's claims under the U.S. Constitution for failure to allege state action, and his fraud claim for failure to plead with particularity as required by Federal Rule of Civil Procedure 9(b). I noted that the remaining claims could be dismissed on any number of grounds and ultimately dismissed on two grounds in the alternative: (1) *forum non conveniens* and (2) the fact that Plaintiff's complaint on its face showed that it was brought after the expiration of the statute of limitations. (Order of 6/17/05 at 3.)

After my October 18, 2004 and June 17, 2005 Orders of dismissal, only seven defendants remained in the case: Il Mattino, Il Giornale, Il Sannio, Roma, Unita, Messaggero Veneto, and Panorama. Prior to Plaintiff's motion for default judgment, these defendants had all failed to respond to the Complaint, despite having nearly two years in which to do so.[1]

Of these seven remaining defendants, Plaintiff has sought default judgment against four: Il Mattino, Il Sannio, Messagero Veneto, and Panorama. However, Plaintiff never applied to the Clerk of Court for entry of default pursuant to

---

**1.** On February 16, 2006, more than five months after Plaintiff moved for default judgment, Defendant Il Mattino responded to the complaint for the first time by way of a motion to dismiss. *Compare Hudson v. North Carolina*, 158 F.R.D. 78, 80 (E.D.N.C.1994) (defendants cured their default by filing motion to dismiss *before* plaintiff filed motion for

default judgment). Plaintiff submitted a letter to the Court objecting to this filing as untimely. As discussed below, because I will deny Plaintiff's motion for default judgment and dismiss Defendant Il Mattino *sua sponte* for lack of personal jurisdiction, I need not address the recently filed motion to dismiss.

Federal Rule of Civil Procedure 55(a).[2] On October 6, 2004, because several defendants had not yet responded to the Complaint and Plaintiff had taken no action against them, I advised Plaintiff by letter to timely request entry of default against these defendants with the Clerk of Court or face dismissal for lack of prosecution. Thereafter, on October 19, 2004, Plaintiff submitted filings requesting that the Clerk of Court enter default judgment in the amount of $26 million against Il Mattino, Il Sannio, Messaggero Veneto, Panorama, and several of the defendants that I later dismissed in my June 17, 2005 Order.[3] To date, Plaintiff has neither requested entry of default nor moved for default judgment against Il Giornale, Roma, or Unita.

The next point at which Plaintiff sought relief for the remaining defendants' failure to respond to the Complaint was on September 13, 2005, when Plaintiff filed a "Motion for Judgment of Default by the Court" against Il Mattino, Il Sannio, Messaggero Veneto, and Panorama. On September 26, 2005, I held a hearing on default, default judgment, and jurisdiction to enter default judgment.[4] At that hearing, Plaintiff's counsel agreed to voluntarily dismiss Defendants Il Giornale and Panorama, leaving only five remaining Defendants in this case—Il Sannio, Il Mattino, Roma, Unita, and Messaggero Veneto.

At the September 26, 2005 default judgment hearing and in an order of October 6, 2005, I notified Plaintiff that before I could enter a default judgment, he was required to present evidence of: (1) this Court's basis of personal jurisdiction over defaulting defendants; (2) proper service of process upon defaulting defendants; (3) facts necessary to state a cause of action; and (4) the amount claimed in damages. I have reviewed Plaintiff's brief in support of default judgment. Because Plaintiff has failed to establish that this Court can exercise personal jurisdiction over the defaulting defendants consistent with the Due Process clause of the federal Constitution, I lack the power to enter a valid default judgment. When a court is asked to enter default judgment against defendants over whom it cannot exercise personal jurisdiction, the court has discretion to dismiss the action *sua sponte*. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir.1999); *see also System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001); *Dennis Garberg & Assocs., Inc. v. Pack–Tech Int'l*, 115 F.3d 767, 771–72 (10th Cir.1997); 10 A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2682 (3d ed.2005) [hereinafter "Wright & Miller"]. Accordingly, I will dismiss Plain-

---

2. "The Federal Rules of Civil Procedure contemplate two steps in the entry of a default judgment. First, the court clerk is expected to enter default pursuant to Rule 55(a).... Second, either the clerk or the court enters the default judgment pursuant to Rule 55(b)." *In re Suprema Specialties, Inc.*, 330 B.R. 40, 47 (S.D.N.Y.2005). Rule 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

3. In doing so, Plaintiff seems to have confused default with default judgment. The Clerk of Court can enter a party's default, but can only enter default judgment where the demand is "for a sum certain or for a sum which can by computation be made certain," Fed.R.Civ.P. 55(b)(1), neither of which is the case here.

4. I treated Plaintiff's motion for default judgment as also encompassing a request for entry of default. *See Mwani v. bin Laden*, 417 F.3d 1, 6 n. 3 (D.C.Cir.2005); *see also Systems Indus., Inc. v. Han*, 105 F.R.D. 72, 74 (E.D.Pa.1985), *vacated on other grounds*, 1986 WL 10551 (E.D.Pa. Sept.15, 1986).

tiff's claims against Defendants Il Sannio, Il Mattino, and Messaggero Veneto *sua sponte* for lack of personal jurisdiction.

Plaintiff has never requested either default or default judgment against Defendants Roma or Unita.[5] As noted above, I notified Plaintiff as early as October 2004 that his claims against certain defendants might be dismissed for lack of prosecution if he did not timely request entry of default against them. Because Plaintiff has delayed an unreasonable amount of time in taking action against Defendants Roma and Unita, I now dismiss all of Plaintiff's claims against these defendants with prejudice for lack of prosecution.

## III. DISCUSSION

### A. *Entry of Default Judgment*

■ Where, as here, a party seeks entry of a default judgment that is not within the limited powers of the Clerk of Court to enter under Rule 55(b)(1), "the party entitled to a judgment by default shall apply to the court therefor." Fed.R.Civ.P. 55(b)(2). Entry of default judgment is not a matter of right that flows automatically from a defendant's failure to respond to the complaint, *Mwani v. bin Laden,* 417 F.3d 1, 6 (D.C.Cir.2005), but rather a matter of the court's discretion. *Hritz v. Woma Corp.,* 732 F.2d 1178, 1180 (3d Cir.1984); *Chamberlain v. Giampapa,* 210 F.3d 154, 164 (3d Cir.2000) (district court's entry of default judgment is reviewed for abuse of discretion).

■ In determining whether to exercise its discretion to enter default judgment against a party, a court may consider a number of factors. *See* 10A Charles A.

Wright, Arthur R. Miller & Mary Kay Kane § 2685. However, as a threshold matter, the court must first satisfy itself that it has personal jurisdiction over the party against whom default judgment is requested. *Mwani,* 417 F.3d at 6; *see also System Pipe,* 242 F.3d at 324; *Tuli,* 172 F.3d at 712; *Garberg,* 115 F.3d at 771–72. A default judgment entered without personal jurisdiction is void. *System Pipe,* 242 F.3d at 324; *Tuli,* 172 F.3d at 712. Because a court should not enter a judgment that will later have to be set aside as void, *see* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane § 2685, if a court asked to enter default judgment against a defendant determines that it lacks personal jurisdiction, it may decline to enter default judgment and instead dismiss for lack of personal jurisdiction *sua sponte.* *See Tuli,* 172 F.3d at 712; *System Pipe,* 242 F.3d at 324; *Garberg,* 115 F.3d at 771–72.

■ Indeed, it has been observed that "when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams v. Life Sav. and Loan,* 802 F.2d 1200, 1203 (10th Cir.1986); *see also Mwani,* 417 F.3d at 6 & n. 4; *System Pipe,* 242 F.3d at 324; *Tuli,* 172 F.3d at 707; *Garberg,* 115 F.3d at 771–72. While it is true that a party may waive lack of personal jurisdiction, when inquiring *sua sponte* into personal jurisdiction in the context of a default judgment, "the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the

---

5. Plaintiff's October 21, 2005 submission to the court is entitled "Brief in Support of Plaintiff's Motion for Default Against Defendants Il Mattino, Il Sannio, and Messaggero Veneto." His October 28, 2005 Amended Certification of Service of his brief in support of default judgment indicates service of the brief upon Il Mattino, Il Sannio, and Messaggero Veneto. Neither document makes any mention of defendants Roma or Unita.

default judgment." *Williams*, 802 F.2d at 1203.

■ When a court considers personal jurisdiction in the posture of a default judgment, "although the plaintiffs retain the burden of proving personal jurisdiction, they can satisfy that burden with a *prima facie* showing," and "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Mwani*, 417 F.3d at 7 (citations omitted).

■ A court cannot obtain personal jurisdiction over a party without proper service of process. *See Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir.1991) ("A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case."). Thus, "[a] default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside." *Gold Kist, Inc. v. Laurinburg Oil Co.*, Inc., 756 F.2d 14, 19 (3d Cir.1985). Therefore, as part of determining whether it has personal jurisdiction over a defaulting defendant, the court must inquire as to whether there was sufficient service of process.

**B.** **Personal Jurisdiction Over Defendants Il Sannio, Il Mattino, and Messaggero Veneto**

**1. Messaggero Veneto**

■ At the outset, I note that nowhere in the record is there any indication that Defendant Messaggero Veneto was properly served with the Complaint, as is necessary for this Court to exercise personal jurisdiction. Whereas the other two defendants that are the subject of Plaintiff's current motion for default judgment have at least had a summons returned executed with respect to them,[6] there is simply no proof of service, or waiver of service, anywhere in the record with respect to Defendant Messaggero Veneto. Accordingly, I can only conclude that proper service was never made upon this defendant.

Without proper service of process, any default judgment entered against a party is void for lack of personal jurisdiction.[7] *Gold Kist*, 756 F.2d at 19. When a court asked to enter default judgment against a party concludes that it lacks personal jurisdiction over the party, the appropriate procedure is to dismiss *sua sponte* for lack of personal jurisdiction. *Tuli*, 172 F.3d at 712. Therefore, I will deny Plaintiff's motion for default judgment with respect to Defendant Messaggero Veneto, and dismiss Plaintiff's claims against this defendant with prejudice for lack of personal jurisdiction.

**2.** **Defendants Il Sannio and Il Mattino**

■ In contrast to Messaggero Veneto, summonses were returned executed as to Defendants Il Sannio and Il Mattino on March 8, 2004 and October 26, 2004 respectively. Thus, for purposes of this

---

**6.** In its motion to dismiss filed after Plaintiff had already moved for default judgment, Defendant Il Mattino asserts, among other things, that it was never properly served. While I do not consider this recently filed motion to dismiss here, *see supra* note 1, I emphasize that I only assume for purposes of Plaintiff's default judgment motion that Il Sannio and Il Mattino were served, and take no position on whether or not they actually received service.

**7.** Even if Messaggero Veneto had been properly served, as discussed below with respect to the other defendants, there is no basis for the exercise of personal jurisdiction over Messaggero Veneto that would be consistent with constitutional due process.

motion only, I assume that these defendants were properly served. However, proper service of process alone is not sufficient to confer personal jurisdiction upon a court. Personal jurisdiction over the particular party must also be shown to be consistent with the Due Process clause of the federal Constitution. Plaintiff submitted no proof of this Court's personal jurisdiction over defaulting defendants prior to the default judgment hearing on September 26, 2005, at which time I notified Plaintiff that such evidence would be required.[8] (Order of 9/29/05 at 1.) In his brief of October 21, 2005, Plaintiff offers the following assertion of the bases for this Court's jurisdiction, which is in essence a repetition of his allegations of personal jurisdiction in the Complaint:

> [T]he Complaint further alleges that the Defendants entered the United States, including but not limited to the Eastern District of Pennsylvania, pursuant to their investigation of the Plaintiff; that the Defendants frequently consulted with (and obtained information from) a CIA informant in an attempt to elicit derogatory evidence against the Plaintiff; and that the Defendants 'disseminated their news articles and transmitted their broadcasts throughout the United States including, but not limited to, this Federal Eastern District of Pennsylvania.' See Count II of the Complaint.

> In addition thereto, Plaintiff engaged in certain investigations pertaining to the Defendant newspapers ... and learned that they are daily publications syndicated with and disseminated by various wire, news, cable and electronic transmission/internet companies and

that they caused dissemination of the defamatory and derogatory articles concerning the Plaintiff to members of the public in the United States and in Pennsylvania as a result of which Plaintiff suffered harm to his reputation and income.

(Pl.'s Br. Supp. Mot. Default J. at 2–3.)

■ Ordinarily, Plaintiff would not be allowed to rest on the bare allegations of his complaint in establishing personal jurisdiction. *See Giusto v. Ashland Chemical Co.,* 994 F.Supp. 587, 591–92 (E.D.Pa. 1998). However, upon entry of default against a defendant, the "well-pleaded" facts alleged in the complaint (except those relating to damages) must be taken as true. *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir.1990). Thus, for purposes of Plaintiff's motion for default judgment, I must accept as true the jurisdictional allegations in the complaint. While on a motion for default judgment Plaintiff need only make a *prima facie* showing of personal jurisdiction, even taking as true all of Plaintiff's allegations, Plaintiff has not alleged sufficient facts to support personal jurisdiction over Defendants.

■ Under Federal Rules of Civil Procedure 4(e), a district court may assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits. *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001). Pennsylvania's long-arm statute authorizes Pennsylvania courts to exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons.Stat. Ann. § 5322(b). Thus, the question becomes whether personal jurisdiction over Defen-

---

**8.** "[T]he district court may not resolve the personal jurisdiction question and decline to enter a default judgment without first giving the plaintiff an adequate opportunity to assert facts establishing the court's jurisdiction over the defendant." 4 Wright & Miller § 1063 (citing *Tuli,* 172 F.3d at 712–13).

dants comports with constitutional due process.

The due process limit to the exercise of personal jurisdiction is defined by a two-part test. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 150 (3d Cir.1996). First, the plaintiff must show that the defendant has constitutionally sufficient "minimum contacts" with the forum. *Id.* Second, the assertion of personal jurisdiction over the defendant must comport with "traditional notions of fair play and substantial justice." *Id.* at 150–51 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Personal jurisdiction may be exercised under two distinct theories: general jurisdiction and specific jurisdiction. General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities. *Remick*, 238 F.3d at 255. To justify the exercise of general jurisdiction over a non-resident, a plaintiff must establish that the defendant's contacts with the forum state are "so continuous and substantial" that the defendant should reasonably expect to be haled into court there on any cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–416, 104 S.Ct. 1868, 80 L.Ed.2d 404. The plaintiff must adduce "extensive and persuasive" facts indicating that the defendant has maintained continuous and substantial forum affiliations. *Metallic Ceramic Coatings, Inc. v. Precision Prods., Inc.*, 2001 WL 122227, at *2 (E.D.Pa. Feb.13, 2001) (citing *Reliance Steel Prod. v. Watson, Ess, Marshall, & Enggas*, 675 F.2d 587, 588–89 (3d Cir.1982)).

Plaintiffs have alleged no such "continuous and substantial" contacts between the Defendants (all Italian newspapers with places of business in Italy) and the commonwealth of Pennsylvania that would give rise to general jurisdiction. There is no allegation that the Defendants are registered to conduct business in Pennsylvania, maintain offices or employees in Pennsylvania, or own property in Pennsylvania. *See Metallic Ceramic*, 2001 WL 122227 at * 2. Therefore I will limit my inquiry to specific jurisdiction.

Specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant "should reasonably anticipate being haled into court" in that forum. *Vetrotex*, 75 F.3d at 151 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 150 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Where, as here, the conduct of the defendant out of which specific jurisdiction allegedly arises is an intentional tort, the particular concerns of the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), are implicated. *See generally IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254 (3d Cir.1998).

*Calder* involved a defamation suit brought in California by the entertainer Shirley Jones, a California resident, against the National Enquirer, a nationally-distributed publication whose largest circulation was in California. *Id.* at 785–86, 104 S.Ct. 1482. Although defendants were Florida residents and nearly all of the conduct leading to the defamatory article occurred in Florida, the Court found that personal jurisdiction in California was

proper under the circumstances. In so holding, the Court noted:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

*Calder*, 465 U.S. at 788–789, 104 S.Ct. 1482.

■ The Third Circuit has interpreted *Calder* to require three showings from a plaintiff alleging specific jurisdiction over a non-resident defendant arising out of an intentional tort: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *IMO*, 155 F.3d at 265–66.

■ Because Plaintiff's complaint can be read as encompassing a claim for defamation, he has met the first factor of the *IMO* test—an intentional tort. However, Plaintiff cannot meet either the second or third factor. As to the second factor, it is far from clear that the brunt of the harm was suffered in Pennsylvania. Plaintiff has stated that he is a Pennsylvania resident (Compl.¶ 1), and he apparently resided in Pennsylvania at the time of filing suit. However, from the allegations in his complaint, which I must accept as true, it appears that Plaintiff was in fact in Italy during part, if not all of the time period relevant to this lawsuit. Most, if not all of the events giving rise to Plaintiff's cause of action appear to have taken place in Italy. As the basis for his causes of action against Defendants, Plaintiff states that in December 1995, he was arrested by Italian authorities "in his native town of Solopaca, Providence of Benevento, Italy" and subsequently imprisoned. (Compl.¶ 15.) He was then the subject of an extensive investigation by "the tribunal of Torre Annunziata, Province of Naples" (*Id.* ¶ 16.), which was then transferred to the tribunal of Milan and ultimately dismissed in November or December 2001. (*Id.* ¶ 19.) The Complaint states that "[t]he dismissal gave rise to the instant cause of action against the named Defendants herein." (*Id.*) Specifically, Plaintiff alleges that from December 2, 1995 through December 12, 2001, the Defendants investigated, published, and circulated defamatory news articles about him that damaged his reputation. (*Id.* ¶ 20–22.)

In order for Plaintiff to have felt the brunt of the harm to his reputation in Pennsylvania, he needs to at least have had some connection to Pennsylvania, such as residence there, during the time when the brunt of harm was suffered. This was presumably from 1995 to 2001, when the defamatory articles were first circulated. Yet it is not clear how long Plaintiff has been a Pennsylvania resident or whether he even spent any time in Pennsylvania at all during the years 1995 to 2001. To the contrary, some of the events alleged in the Complaint, such as Plaintiff's arrest and incarceration in Italy, clearly required Plaintiff's presence *outside* Pennsylvania during this time period. Thus, it is impossible to determine whether Plaintiff suf-

fered the brunt of the harm from Defendants' conduct in Pennsylvania.

Even if I assumed that Plaintiff suffered the brunt of the harm in Pennsylvania, Plaintiff has not alleged sufficient facts to satisfy the third *IMO* factor. He has not alleged any facts tending to show that the Defendants "expressly aimed" their tortious conduct at Pennsylvania such that Pennsylvania was the focal point of the harm. *See IMO*, 155 F.3d at 265. Plaintiff has made essentially four allegations to support personal jurisdiction in Pennsylvania: (1) Plaintiff is a United States citizen and a Pennsylvania resident; (2) "Defendants entered the United States, including but not limited to the Eastern District of Pennsylvania, pursuant to their investigation of the Plaintiff"; (3) "Defendants frequently consulted with (and obtained information from) a CIA informant in an attempt to elicit derogatory evidence against the Plaintiff"; and (4) "Defendants disseminated their news articles ... throughout the United States including, but not limited to, this Federal Eastern District of Pennsylvania" with resulting harm to Plaintiff's reputation. (Pl.'s Br. Supp. Mot. Default J. at 2–3 & attached Statement.)

Third Circuit law is clear that the third factor of *IMO* is not met merely because Plaintiff is a Pennsylvania resident, even if he resided in Pennsylvania at the time of the tortious conduct. *IMO*, 155 F.3d at 265 ("Nor did *Calder* carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state."). Even if Defendants knew Plaintiff was a Pennsylvania resident and could thus anticipate that he would suffer the brunt of the harm there, this would not, in itself, make Pennsylvania the focal

point of the tortious activity.[9] *Id.* ("Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement."). Rather, "[t]he defendant must 'manifest behavior intentionally targeted at and focused on' the forum for *Calder* to be satisfied." *Id.* (quoting *ESAB Group, Inc., v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir.1997)).

Nor can communications between Defendants and an American CIA informant support the exercise of personal jurisdiction over Defendants in Pennsylvania. There is no indication that this CIA informant is or was a resident of Pennsylvania, met or otherwise communicated with Defendants in Pennsylvania, or indeed, has any contact with Pennsylvania whatsoever. Even if this agent did have a connection to Pennsylvania, "some minimal correspondence alone will not satisfy minimum contacts." *IMO*, 155 F.3d at 259 n. 3 (quoting *Carteret Savings Bank v. Shushan*, 954 F.2d 141, 149 (3d Cir.1992)).

Thus, we are left with Plaintiff's statements that Defendants entered the United States, "including but not limited to" Pennsylvania, to investigate their defamatory articles about the Plaintiff, and that Defendants published these articles throughout the United States "including, but not limited to" Pennsylvania. By their very terms, these statements refute any notion that Defendants "expressly aimed" their tortious activities at Pennsylvania in particular, rather than at the United States as a whole.

Plaintiff states that Defendants published articles nationwide "including but not limited to" in Pennsylvania, and that as a result some articles were distributed in

---

**9.** Moreover, Plaintiff has not alleged that Defendants knew he was a Pennsylvania resi-

dent. *See Harris v. Trans Union, LLC,* 197 F.Supp.2d 200, 206 (E.D.Pa.2002).

Pennsylvania. Yet where a defamatory article is published nationwide, a defendant cannot be said to have "expressly aimed" it at a particular forum state unless there is "a unique relationship between the state and the plaintiff's industry or business." *Bank Express Int'l v. Kang,* 265 F.Supp.2d 497, 506 (E.D.Pa.2003). Indeed, *Calder* itself involved a nationally distributed publication that was circulated in California. *Calder,* 465 U.S. at 785, 104 S.Ct. 1482. If personal jurisdiction for defamation claims could be premised on the mere circulation of a nationally-published defamatory article in the forum state, that would have been the end of the inquiry. Yet in finding personal jurisdiction, the Supreme Court relied instead on the special relationship between the defamatory article, the plaintiff, the motion picture industry in which she worked, and the state of California. *See Calder,* 465 U.S. at 788–89, 104 S.Ct. 1482; *see also Remick,* 238 F.3d at 259 ("Significantly, Remick has not asserted that Pennsylvania has a unique relationship with the boxing industry, as distinguished from the relationship in *Calder* between California and the motion picture industry."); *Bank Express,* 265 F.Supp.2d at 497 ("Here, BEI has not asserted that there is a unique relationship between the ATM servicing industry and Pennsylvania. . . ."). In this case, Plaintiff cannot show any special relationship between the defamatory articles, himself or his profession, and Pennsylva-

nia. Without some such connection to Pennsylvania, the mere fact that Defendants published their articles nationwide and that some ended up in Pennsylvania is not sufficient to confer jurisdiction over Defendants under *Calder* and *IMO. See Remick,* 238 F.3d at 248 (defendant's allegedly tortious posting of plaintiff's photo on website accessible worldwide was not conduct expressly aimed at Pennsylvania so as to confer personal jurisdiction). Likewise, Plaintiff's statement that Defendants entered the United States "including but not limited to" Pennsylvania to investigate their defamatory articles does not indicate that Defendants in any way "expressly aimed" their conduct specifically at Pennsylvania.

Because none of the jurisdictional facts Plaintiff has set forth, or any combination thereof, show any particular targeting of Pennsylvania by Defendants, Plaintiff cannot satisfy the third factor of the *IMO* test. Thus, personal jurisdiction over Defendants in Pennsylvania would not comport with constitutional due process, and thus I cannot exercise personal jurisdiction over them.[10]

Because a court without personal jurisdiction over a defendant cannot enter a valid default judgment, I will deny Plaintiff's motion for default judgment and dismiss Defendants Il Sannio, Il Mattino, and Messaggero Veneto with prejudice for lack of personal jurisdiction.

---

**10.** Because Plaintiff has not demonstrated that Defendants possess constitutionally significant minimum contacts with Pennsylvania, I do not address whether the exercise of personal jurisdiction over Defendants would comport with "traditional notions of fair play and substantial justice." *Vetrotex,* 75 F.3d at 150. I note, however, that Defendants are Italian newspapers with their places of business in Italy, and the Supreme Court has noted that "[t]he unique burdens placed upon one who must defend oneself in a foreign

legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano County,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *see also Northeastern Power Co. v. Balcke-Durr, Inc.,* 49 F.Supp.2d 783, 789 (E.D.Pa. 1999) (finding that exercise of personal jurisdiction over German company under the circumstances would violate "fair play and substantial justice").

## C. *Lack of Prosecution against Defendants Roma and Unita*

 Under Federal Rule of Civil Procedure 41(b) as well as a court's inherent power, a court may dismiss an action with prejudice *sua sponte* for a plaintiff's failure to prosecute "so as to achieve the orderly and expeditious disposition of cases." *Spain v. Gallegos*, 26 F.3d 439, 454 (3d Cir.1994). The decision to dismiss for lack of prosecution lies within the discretion of the district court. *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002) (dismissal for failure to prosecute is reviewed for abuse of discretion). This discretion is informed by the six-factor test enunciated in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984) for "sanction orders which deprive a party of the right to proceed with or defend against a claim." *Comdyne*, 908 F.2d at 1148. The *Poulis* factors are: (1) the extent of the party's personal responsibility; (2) the prejudice to the opponent; (3) any history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) whether effective alternative sanctions are available; and (6) the meritoriousness of the claim or the defense. *Gallegos*, 26 F.3d at 455 (citing *Poulis*, 747 F.2d at 868).

Neither Defendant Roma nor Defendant Unita has answered or otherwise responded to the Complaint. Summonses were returned executed as to these defendants on March 22, 2004 and February 25, 2004 respectively. Plaintiff has requested neither entry of default nor default judgment against these defendants, despite being notified in October of 2004 that I would dismiss the claims against them for lack of prosecution if default was not timely requested. Accordingly, I will now dismiss the claims against these defendants.

This result is proper under the six-factor test of *Poulis*. The Plaintiff has had ample opportunity to request entry of default against Roma and Unita and has failed to do so. Because the merits of Plaintiff's claims are questionable and Plaintiff has shown no interest in pursuing them against Roma or Unita, these defendants should be relieved of the prejudice of an ongoing threat of a default judgment. As no sanction other than dismissal with prejudice will accomplish this, I will dismiss the claims against Roma and Unita with prejudice for lack of prosecution.

## IV. CONCLUSION

For the foregoing reasons, I will deny Plaintiff's motion for default judgment against Defendants Il Sannio, Il Mattino, and Messaggero Veneto. I will dismiss the claims against these defendants with prejudice for lack of personal jurisdiction. Finally, I will dismiss the claims against Defendants Roma and Unita with prejudice for lack of prosecution.

## ORDER

**AND NOW**, this ___25th___ day of April, 2006, upon consideration of Plaintiff's Motion for Judgment by Default against Defendants Il Sannio, Il Mattino, and Messaggero Veneto (Doc. # 57), it is **ORDERED** that:

(1) the motion is **DENIED** and the Complaint is **DISMISSED WITH PREJUDICE** with respect to Defendants Il Sannio, Il Mattino, and Messaggero Veneto for lack of personal jurisdiction;

(2) with respect to Defendants Roma and Unita, the Complaint is **DISMISSED WITH PREJUDICE** for lack of prosecution; and

(3) Defendant Il Mattino's Motion to Dismiss (Doc. # 65) is **DENIED AS MOOT.**