**Rothermel v. Kelly's Kids**

C.P. of Philadelphia County, January Term 2006, no. 2576.

*James B. Dolan,* for plaintiff.
*Jeffery C. Pettit,* for defendant.

BERNSTEIN, *J.,* August 18, 2006—

### ORDER

The plaintiff filed her complaint on January 19, 2006 and served it on March 8, 2006. Plaintiff alleged counts of breach of contract, promissory estoppel, quantum

meruit, and wrongful conversion against defendant. Defendant filed preliminary objections on March 20, 2006 which asserted that jurisdiction was improper in Pennsylvania, and venue improper in Philadelphia. Plaintiff filed her answer to the preliminary objections on April 7, 2006. Defendant filed its motion to determine the preliminary objections on April 18, 2006, and plaintiff filed her answer on May 8, 2006. On May 16, 2006 this court entered an order which set a date for oral argument regarding the preliminary objections. The order stated that the court would accept affidavits, deposition testimony, or live evidence at the hearing. This court accepted evidence and heard arguments on the preliminary objections on June 30, 2006.

Plaintiff is a resident of Wayne, Pennsylvania, located in Delaware and Montgomery counties. Defendant in this case is a Louisiana corporation with its principal place of business in the state of Mississippi, registered to do business in the state of Mississippi and the state of Texas. Defendant is not registered to do business in Pennsylvania and neither owns nor leases any real estate in Pennsylvania. Defendant has no employees in Pennsylvania.

Defendant sells children's apparel. It sells its products through a catalog, website, and "home parties" in customer's homes. All of defendant's salesmen are independent contractors. In 2005 Kelly's Kids contracted with 554 independent contractor salesmen, only six of whom did any business in Pennsylvania. Defendant's gross sales in 2005 totaled $13,278,011.78, less than 1 percent ($96,556.42) from Pennsylvania. Defendant had 108,595 total orders in 2005 but only 848 (0.78 percent) came

from Pennsylvania customers. Most of these Pennsylvania orders (621, or 73.23 percent) came from 72 home parties hosted in Pennsylvania in 2005. Only 28 of the 227 individual orders made in Pennsylvania were received through Kelly's Kids' website. Thus the total Pennsylvania web-generated sales represent 0.00026 percent of defendant's total 2005 business.

Defendant's website permits users to view and purchase merchandise, apply to be a sales representative, sign up to host a home party, sign up for a personal shopping account, request a catalog, and contact the defendant via e-mail. Kelly's Kids received 4,499 orders over its website in 2005, only 28 of which originated in Pennsylvania (0.62 percent).

In July 2005 plaintiff entered into a contract to consult for the defendant. The contract was not created in Pennsylvania.[1] Plaintiff performed most of her services for defendant in New York and New Jersey, and attended meetings in Mississippi. Plaintiff performed no services in Pennsylvania.[2] This contract was to expire on October 14, 2005.

On September 2, 2005, plaintiff met with Carol Follmer, the general manager, at defendant's offices in Mississippi. They discussed extending the contract for an additional year. Plaintiff e-mailed a proposal containing the terms of the contract extension to Ms. Follmer on September 13, 2005. Plaintiff may have sent the e-mail

---

1. Plaintiff offered no evidence to demonstrate that the contract was created in Pennsylvania. This court must conclude that it was not.

2. Affidavit of Carol Follmer, the general manager of Kelly's Kids.

from Kansas.[3] During a telephone conversation on October 17, 2005 plaintiff offered and Ms. Follmer accepted a six-month contract in accord with the September 13 e-mail.[4] There has been no evidence presented that either person was in Pennsylvania at the time the contract extension was agreed upon. Plaintiff claims that defendant improperly fired her on November 30, 2005, in breach of their oral contract. None of the events surrounding this cause of action occurred in Philadelphia County.

Pennsylvania courts' jurisdiction over non-residents is governed by 42 Pa.C.S. §5322(b). "[T]he jurisdiction of the tribunals of [Pennsylvania] shall extend . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." In *International Shoe Co. v. Washington,* the Supreme Court of the United States held that traditional notions of justice govern the constitutional standards of jurisdiction. "[D]ue process requires . . . that . . . if [the defendant] [is] not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[5]

---

3. Defendant's exhibit O contains this e-mail, as well as an e-mail sent by plaintiff two days later from Kansas. The second e-mail indicates that plaintiff's flight to Philadelphia was delayed. There is no evidence of any Pennsylvania connection.

4. The court assumes that these facts, as plead by plaintiff, are true for the purpose of determining preliminary objections.

5. 326 U.S. 310, 316 (1945). (citations omitted)

It is well-established that "[Pennsylvania] courts may exercise two types of in personam jurisdiction over a non-resident defendant. . . . general jurisdiction, which is founded upon a defendant's general activities within the forum as evidenced by continuous and systematic contacts with the state . . . [and] specific jurisdiction, which . . . is focused upon the particular acts of the defendant that gave rise to the underlying cause of action."[6] The plaintiff does not claim that this court has specific jurisdiction and has not alleged any facts which would support such a claim. Specific jurisdiction is not in issue. The exercise of jurisdiction in Pennsylvania is proper only if the requirements for general jurisdiction are satisfied.

The Supreme Court of the United States in *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408 (1984), held that the defendant must engage in continuous and systematic general business contacts with the forum state in order for the exercise of general jurisdiction to be constitutionally exercised. This requirement can be satisfied by the presence of a company office,[7] but cannot be satisfied merely by some commercial transactions.[8] Over a period of eight years the defendant in *Helicopteros* purchased 80 percent of its equipment and replacement parts costing more than $4,000,000 from

---

6. *Mar-Eco Inc. v. T & R Sons Towing and Recovery Inc.,* 837 A.2d 512, 515 (Pa. Super. 2003).

7. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 438-39, 445-46 (1952) (jurisdiction was proper over a Philippine mining company that was run out of an office in Ohio during WWII).

8. *Helicopteros,* 466 U.S. at 416 (jurisdiction was not proper over a Colombian corporation that repeatedly purchased training, services, and equipment in Texas, and trained its employees there).

Texas companies, sent its employees to Texas for training and technical consultation, and transferred over $5,000,000 into its bank accounts from Texas. This level of business contact, though repetitious, was not sufficient to rise to the level of "systematic and continuous" because Helicopteros maintained no continuous presence in the state. More recently, in *D'Onofrio v. Il Mattino,* a district court, applying Pennsylvania law, catalogued the factors which informed its inquiry into whether general jurisdiction was appropriate. The defendants' only contacts with Pennsylvania consisted of an investigative trip and sending of news reports by wire, cable and over the Internet.[9] The *D'Onofrio* court refused to exercise jurisdiction because the defendants were not registered to conduct business in Pennsylvania, did not maintain offices and employees in Pennsylvania, and did not own any property in Pennsylvania.[10]

Defendant Kelly's Kids' traditional business contacts with Pennsylvania are limited to commercial transactions amounting to a tiny percentage of its total sales. It is not registered to do business in Pennsylvania. It maintains no property in Pennsylvania. It has no employees in Pennsylvania. It has no offices in Pennsylvania. It has no permanent or continuous presence in Pennsylvania whatsoever, except its perpetual potential to be contacted via the world-wide web. There are no brick and mortar continuous and systematic general business contacts with Pennsylvania. The exercise of jurisdiction in this case can only be proper if the same due process requirements of general jurisdiction, namely systematic

9. 430 F. Supp.2d 431, 439 (E.D. Pa. 2006).
10. 430 F. Supp.2d at 440.

and continuous business contacts, are satisfied by non-traditional means over the Internet.

"[T]he Internet [is] a global 'super-network' of over 15,000 computer networks used by over 30 million individuals, corporations, and educational institutions worldwide."[11] In recent years it has become an indispensable and ubiquitous business tool. The capacity of the modern business to extend its reach worldwide has led the federal courts to consider the ways in which Internet activity may expose corporations to personal jurisdiction in foreign forums.

In *Zippo Mfg. Co. v. Zippo Dot Com Inc,* 952 F. Supp. 1119, 1123 (W.D. Pa. 1997), a manufacturer of cigarette lighters sued an internet news service for trademark infringement. The defendants contracted with 3,000 Pennsylvania residents to provide access to its news service. To do so, it utilized seven internet service providers in Pennsylvania. These business contacts were all made while the defendant was illegally using the plaintiff's trademark. The defendant's only contacts with Pennsylvania were over the Internet. Nonetheless, the *Zippo* court held that the exercise of specific jurisdiction was permissible.[12] As stated by the Supreme Court of the United States in *Burger King Corp. v. Rudzewicz,* "[j]urisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum state."[13] The *Zippo* court used a sliding scale analysis to determine whether a website was sufficiently interactive to justify an exer-

11. *Zippo Mfg. Co. v. Zippo Dot Com Inc.,* 952 F. Supp. 1119, 1123 (W.D. Pa. 1997).
12. *Id.* at 1125-26.
13. 471 U.S. 462, 476 (1985).

cise of jurisdiction. "At one end of the spectrum are situations where a defendant clearly does business over the Internet. . . . At the opposite end are situations where a defendant has simply posted information on an Internet web site which is accessible to users in foreign jurisdictions. . . . The middle ground is occupied by interactive web sites where a user can exchange information with the host computer."[14]

The standard by which any commercial activity must be measured for general jurisdiction purposes is the systematic and continuous contacts standard. "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."[15] The inquiry for commercial activity on the Internet is identical to the inquiry for commercial activity conducted by telephone, telegraph, or physical mail. The examination of the nature and quality of the commercial activity in an Internet case requires exactly the same constitutional analysis as any other jurisdictional question.

Plaintiff urges this court to interpret *Zippo* and its progeny as establishing a sliding scale whereby any website of sufficient interactivity in the middle of the sliding scale permits the exercise of general personal jurisdiction. By this logic, any organization or individual in the world that operates a minimally interactive website would be subject to personal jurisdiction in Pennsylvania regarding any cause of action whatsoever.[16]

14. 952 F. Supp. at 1124.

15. *Zippo,* 1119 F. Supp. at 1125-26. (emphasis in original)

16. Given the pervasiveness of interactive websites in the global economy, this interpretation would transform Pennsylvania into the

This result offends traditional notions of fair play and substantial justice.

Although the court in *Zippo* dealt with specific jurisdiction, the Superior Court of Pennsylvania has applied the same approach to general jurisdiction in *Mar-Eco Inc. v. T & R Sons Towing and Recovery Inc.*, 837 A.2d 512 (Pa. Super. 2003). In *Mar-Eco* a Pennsylvania motor vehicle dealer sued a Maryland motor vehicle dealer, claiming that personal jurisdiction was appropriate. "[The defendant] regularly conduct[ed] business in Pennsylvania through . . . its [website] . . . where customers can order parts, schedule service, apply for financing, calculate payments, search [defendant]'s new and used vehicle inventory and apply for employment."[17] The website also permitted customers to exchange trade-in information with the dealership, get specific price quotes on specific vehicles, and select from a variety of financing packages. Users were notified that the dealership would submit any of the user's private information transmitted over the website to third parties. The defendant created a virtual dealership. Virtually any activity which could have been conducted at the physical dealership could be virtually conducted over the website. The Superior Court found that the defendant's website fell into the middle ground of interactivity, and that, because the defendant regularly conducted business in Pennsylvania

world's forum. Such unrestricted forum shopping is as offensive to traditional notions of fair play and substantial justice when it results in cases being heard in Pennsylvania as when a Pennsylvania corporation is forced to litigate in Siberia an action which arose in Pennsylvania. 837 A.2d at 514.

17. 837 A.2d at 514.

over its website, the exercise of general jurisdiction was appropriate.[18]

Since the *Mar-Eco* virtual dealership website was the middle ground of interactivity, the Kelly's Kids website falls on the low end of interactivity. While the *Mar-Eco* website simulated nearly every activity which a customer could conduct at the physical dealership, Kelly's Kids' website is little more than catalog orders which can be transmitted instantaneously. The contact made over the website flows entirely from the customer to Kelly's Kids. Customers receive no feedback from the website. Customers merely select items for purchase, place an order, provide payment,[19] provide information and await receipt of the items by mail. The only difference between this process and placing an order through a mail order catalog or by phone is the speed with which the order is received.

Kelly's Kids' Pennsylvania website contacts are initiated solely by its customers. These contacts are irregular, not systematic.[20] Kelly's Kids effected only 28 Internet sales in Pennsylvania in 2005, less than three per month, one sale every 13 days. A single sale of child's clothing every two weeks is not doing business continuously.[21] The irregular distribution of a business contact once

---

18. *Id.* at 514.

19. Although there is no evidence that credit card information can be received via the website, the court assumes this interactivity.

20. The mere potential to conduct business in a systematic way is not equivalent to actually conducting systematic business contacts.

21. Being continuously available to business is not the same as continuously conducting business. Maintaining a telephone line to accept orders does not mean that business is continuously being conducted over that telephone line.

every two weeks does not satisfy the constitutional requirements of due process even if conducted over the Internet.

This court does not have jurisdiction over the defendant. Defendant's preliminary objections are therefore sustained.