**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3572
_____

MARK IV TRANSPORTATION & LOGISTICS,
                                                    Appellant

v.

LIGHTNING LOGISTICS, INC.; TRAVELLER LOGISTICS, INC.;
JOHN GREGORY O'RIORDAN; CROSSTOWN COURIER, INC.;
SCOTT EVATT*
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-09-cv-06480)
District Judge: Honorable Esther Salas
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 27, 2017
_____

Before: AMBRO, VANASKIE, and RESTREPO, *Circuit Judges*

(Opinion Filed: August 25, 2017)

---

* Mark IV Transportation & Logistics is a New Jersey corporation whose correct name is "Mark IV Transportation & Logistics, Inc." Lightning Logistics was a Tennessee limited liability company whose correct name is "Lightning Logistics, LLC."

_____

_____

VANASKIE, *Circuit Judge.*

This appeal arises out of the failure of the now-defunct Lightning Logistics, LLC ("Lightning") to pay for delivery services rendered by Appellant Mark IV Transportation & Logistics, Inc. ("Mark IV"). The issue presented by Mark IV is whether grounds exist to pierce Lightning's corporate veil and impose alter ego liability to establish personal jurisdiction over defendants who are residents of Tennessee. Those defendants are Appellees: Scott Evatt, former President of Lightning; John Gregory O'Riordan, a former owner of Lightning; and Crosstown Courier, Inc. ("Crosstown"), Evatt's current company.

The District Court held that Lightning was not a "sham or dummy" entity such that its corporate veil should be pierced and alter ego liability imposed. *Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC*, 2014 WL 7073088, *7 (D. N.J. Dec. 15, 2014). The District Court then granted Evatt and Crosstown's motion to dismiss for lack of personal jurisdiction. The District Court also, after requesting a supplemental letter brief and holding a hearing on the matter, dismissed the claims against O'Riordan for lack of personal jurisdiction. For the following reasons, we will affirm the orders of the District Court.

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

I.

Mark IV is a New Jersey corporation that provides delivery services. Lightning was a Tennessee LLC that provided logistical services to commercial shippers, including arranging for delivery of packages by companies like Mark IV. Lightning was owned and operated by Evatt and O'Riordan, both of whom are Tennessee residents. Evatt currently owns and operates Crosstown, another Tennessee corporation that provides courier services. In 2008, Mark IV agreed to provide "last mile" delivery services in New Jersey for Lightning.[1] Mark IV continued to provide delivery services for Lightning until August of 2009. At that time, Mark IV was owed approximately $100,000 under its agreement with Lightning.

In December of 2009, Mark IV commenced this action against only Lightning. In April of 2010, Lightning was administratively dissolved by the State of Tennessee. In February of 2011, Mark IV filed an amended complaint, adding as defendants Evatt, O'Riordan, Crosstown, and Traveller Logistics, Inc. ("Traveller"), the successor corporation to Lightning. The District Court entered default judgment against Lightning and then default judgment against Traveller as Lightning's successor-in-interest. Traveller itself was later dissolved. Mark IV then sought to impose personal liability on Evatt, O'Riordan, and Crosstown as alter egos of Lightning.

---

[1] "Last mile" delivery services consists of delivering packages over the final leg of a shipment, such as from an airport or handling facility to the package's ultimate recipient.

After permitting discovery, the District Court determined that Mark IV had failed to present evidence sufficient to warrant piercing the corporate veil of Lightning. Because personal jurisdiction could be asserted over Evatt, O'Riordan, and Crosstown only if the liability of Lightning could be imputed to them, the District Court dismissed those parties for lack of personal jurisdiction.[2]  Mark IV filed this timely appeal.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and our jurisdiction arises under 28 U.S.C. § 1291.  We exercise plenary review over the District Court's dismissal for lack of personal jurisdiction.  *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 101 (3d Cir. 2009).

## III.

Under the New Jersey Limited Liability Company Act, "[t]he law of the state or other jurisdiction under which a foreign limited liability company is formed governs . . . the liability of a member as member and a manager as manager for the debts, obligations, or other liabilities of the company."  N.J.S.A. 42:2C-57(a)(2). Accordingly, as Lightning was a Tennessee LLC, Tennessee law governs Mark IV's alter ego theory of liability. Generally, under Tennessee law, members, owners, employees, or other agents of an LLC have no personal liability for the debts or obligations of the company.  *See* Tenn.

---

[2] O'Riordan appeared *pro se* before the District Court and filed an answer to Mark IV's Amended Complaint.  Although O'Riordan was named as a defendant in the Second Amended Complaint, he filed no answer or any other response.  Mark IV then moved for default judgment against O'Riordan.  The District Court denied this motion, however, and *sua sponte* dismissed the claims against O'Riordan.

Code Ann. §§ 48-217-101(a)(l), 48-249-14(a)(l)(B). "To pierce the corporate veil," and impose liability on a member or parent company, "a court must be convinced that the separate corporate entity 'is a sham or a dummy' or that disregarding the separate corporate entity is 'necessary to accomplish justice.'" *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88 (Tenn. 2010) (quoting *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003)).

Because "there is a presumption of corporate regularity," Tennessee courts have warned that "[t]he principle of piercing the corporate veil [should] be applied with great caution and not precipitately." *Muroll Gesellschaft M.B.H. v. Tenn. Tape, Inc.*, 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995). A number of factors are to be assessed in determining whether the corporate veil should be pierced, including:

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 438 (Tenn. Ct. App. 2008) (quoting *Fed. Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984)). No one factor is conclusive in this analysis, but it is necessary "that the equities substantially

favor the party requesting the court to disregard the corporate status." *Trost*, 333 S.W.3d at 89 (citing *Barbour*, 112 S.W.3d at 140–41).

Mark IV argues that the failure of Evatt and O'Riordan to adhere to corporate formalities in operating Lightning and Evatt's alleged misuse of Lightning's corporate funds compel the piercing of its corporate veil. According to Mark IV, Evatt withdrew $160,000 from Lightning's line of credit. This withdrawal left Lightning unable to pay Mark IV for the services it rendered pursuant to the contract. Mark IV also notes that Lightning leased its office space from Crosstown and, on occasion, shared employees with the company. We agree with the District Court, however, that, although Lightning did operate informally and Evatt did draw on Lightning's line of credit, the equities do not weigh so substantially in Mark IV's favor that Lightning's corporate status should be disregarded. *Trost*, 333 S.W.3d at 89.

First, with regard to Lighting's informal structure, Tennessee does not require LLCs to adhere to corporate formalities to maintain their limited liability status. *See* Tenn. Code Ann. § 48-217-101(e) ("The failure of an LLC to observe the usual company formalities or requirements relating to the exercise of its LLC powers or management of its business is not a ground for imposing personal liability on the members, governors, managers, employees or other agents of the LLC."); *NVK Spinning Co., LTD. v. Nichols*, 2014 WL 28831, *6 (W.D. Tenn. Jan. 2, 2014) ("Adherence to corporate formalities is not required for an LLC to maintain its limited-liability status under the statute."). Courts may consider a failure to adhere to corporate formalities in their veil-piercing analyses, but in the absence of other factors, such a failure does not make a business a "sham or

6

dummy." *Trost*, 333 S.W.3d at 88. As President of Lightning, Evatt had broad authority to make decisions affecting the business. Misguided decisions typically do not warrant piercing the corporate veil.

Evatt's withdrawal of funds does not require a different result. Courts may pierce the corporate veil "when the corporation is liable for a debt but is without funds to pay the debt, and the lack of funds is due to some misconduct on the part of the officers and directors." *In re Steffner*, 479 B.R. 746, 755–56 (Bankr. E.D. Tenn. 2012) (quoting *VP Bldgs., Inc. v. Polygon Grp.*, No. M2001–00613–COA–R3–CV, 2002 WL 15634, *4 (Tenn. App. Jan. 8, 2002). Evatt used Lighting's line of credit to secure a loan for Crosstown, but, as the District Court noted, nothing in the record suggests that the line of credit was designated exclusively for paying creditors. In *Steffner*, the owner of a single member LLC transferred funds from the company to another entity he owned just one day before a garnishment was served on the LLC. *Steffner*, 479 B.R. at 753. The Bankruptcy Court declined to pierce the LLC's corporate veil as there was "no evidence . . . that the transfer resulted in a permanent inability for [the LLC] to meet its financial obligations." *Id.* at 757. Here, as in *Steffner*, the withdrawal did not rise to the level of misconduct necessary for disregarding corporate status. *Id.* at 757.

The same is true of the sharing of resources and personnel. In *Steffner*, the Bankruptcy Court declined to pierce the LLC's corporate veil despite the fact that the two companies "operated out of the same building . . . and used the same bank, attorneys, and accounts." *Id.* As was the case in *Steffner*, Lightning and Crosstown were "formed at different times and for different purposes" such that Lightning could not be considered a

"sham or dummy" even if it did rent office space from Crosstown.[3] *Id.* at 757, 756. Because the facts do not support piercing Lightning's corporate veil or the imposition of alter ego liability, the District Court properly dismissed the claims against Evatt and Crosstown for lack of personal jurisdiction.

Mark IV also argues that the District Court erred in *sua sponte* dismissing the claims against O'Riordan. Mark IV correctly notes that O'Riordan did not raise the issue of personal jurisdiction and that he filed an answer to Mark IV's Amended Complaint. O'Riordan, who was not represented by counsel during the District Court proceedings,[4] also filed a "Preliminary Statement" regarding Mark IV's motion for default judgment, but never submitted an answer or any other response to the Second Amended Complaint. After a hearing on the issue, the District Court dismissed the claims for lack of personal jurisdiction, noting that O'Riordan "never answered the Second Amended Complaint, or sought an extension of time to do so, or filed any other application or pleading in [the] matter." (App. 8.)

"[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *accord Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997); *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 436 (E.D. Pa. 2006); *see also Prudential Ins. Co. of Am. v. Bramlett*, 2010 WL 2696459, *1 (D. N.J.

---

[3] Crosstown was formed approximately 10 years before Lightning was established. Moreover, unlike Lightning, Crosstown's principal business was in "last mile" delivery services.

[4] O'Riordan has not participated in this appeal, either through counsel or *pro se*.

8

July 6, 2010) ("Before entering default judgment, the Court must address the threshold issue of whether it has personal jurisdiction and subject matter jurisdiction over the parties.").  As explained in *Allaham v. Naddaf*, 2015 WL 3421464, *3 (E.D. Pa. May 28, 2015):

> [I]n contrast to the general rule that personal jurisdiction is waivable, a court considering a motion for a default judgment must *sua sponte* ensure that an exercise of personal jurisdiction over each defaulting defendant is proper. *Compare Jasper v. Bexar Cnty. Adult Det. Ctr.*, 332 F. App'x 718, 719 (3d Cir. 2009) (noting the general rule that "because personal jurisdiction may be conferred by consent of the parties . . . a court may not sua sponte dismiss for want of personal jurisdiction") (internal quotation marks and citation omitted), *with AnnexTelecom Co. v. Brown*, 2014 WL 5149101, *1 (E.D.Pa. Oct. 14, 2014) (asserting that "the [c]ourt may only grant a motion for default judgment if it has ... personal jurisdiction over the parties against whom a judgment for affirmative relief is sought") (citation omitted), *and Pars Tekstil Sanayi Tic, A.S. v. Dynasty Designs, Inc.*, 2008 WL 3559607, *1 (E.D. Pa. Aug. 13, 2008) (confirming that "[a] district court may not enter a default judgment unless it is satisfied that it has personal jurisdiction over the defendant") (citation omitted).  "In reviewing its personal jurisdiction, the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).

Because the District Court *sua sponte* addressed the lack of personal jurisdiction in the context of a motion for default judgment, dismissal of O'Riordan was proper.

IV.

For the foregoing reasons, we will affirm the December 15, 2014 and August 10, 2016 Orders of the District Court.

9